WATERTOWN POLICE UNION LOCAL 541, AFSCME, AFL-CIO *v.* TOWN OF WATERTOWN ET AL.
(13424)

HEALEY, SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued December 8, 1988—decision released March 14, 1989

*Joseph Lander,* with whom, on the brief, was *Frank J. Raccio,* for the appellant (plaintiff).

*James R. Smith,* for the appellee (named defendant).

CALLAHAN, J. The plaintiff, the Watertown Police Union Local 541, AFSCME, AFL-CIO, appeals from the judgment of the Superior Court denying its application, brought pursuant to General Statutes § 52-418 (a),[1] to vacate an arbitration award. On appeal the plaintiff claims that the arbitration board exceeded its authority because the award it rendered was in contravention of public policy and the trial court, therefore, erred in refusing to vacate it. We find no error.

---

[1] General Statutes § 52-418 (a) provides in pertinent part: "VACATING AWARD. (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

The following facts, disclosed by the record, are relevant. The named defendant, the town of Watertown (town), and the plaintiff entered into a labor contract on October 31, 1984, in which they designated the codefendant, the Connecticut board of mediation and arbitration (board), as the arbitrator empowered to resolve disputes between them. The contract also addressed the standards by which the town could discharge union members. Pertinent to our discussion are article VI, § 8 of the contract which applied specifically to probationary employees and stated that such employees "may be terminated by the Town in its sole discretion for any reason whatsoever," and article XIII, § 1 which was a general provision providing that "[n]o employee covered by this Agreement shall be discharged . . . except for just cause, and the Town shall be required to prove, beyond a reasonable doubt, that just cause exists in those instances."

In February, 1985, the town discharged Michael Thompson, a probationary police officer. The plaintiff, claiming the discharge was not justified, grieved the town's action to arbitration. After an arbitration hearing on March 5, 1986, the board, in a written decision, cited the following findings of fact concerning Thompson's discharge:[2] On January 5, 1985, Thompson was assigned to a patrol car with a part-time police officer. Because he was still in training at the police academy and the town did not want him involved in court appearances which would interfere with his training, Thompson's supervisor, Sergeant James Sheehan, ordered

[2] In its brief, the plaintiff recites facts beyond those cited by the board in its written opinion. This court, however, is bound by the board's findings of fact. *Caldor, Inc.* v. *Thornton,* 191 Conn. 336, 340, 464 A.2d 785 (1983), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985); *Bic Pen Corporation* v. *Local No. 134,* 183 Conn. 579, 584, 440 A.2d 774 (1981); *Meyers* v. *Lakeridge Development Co.,* 173 Conn. 133, 135, 376 A.2d 1105 (1977) (on appeal courts will not review the evidence presented to an arbitrator). See generally discussion, infra.

him "not to make any motor vehicle stops." Contrary to this order, Thompson did make a motor vehicle stop during his tour of duty that night. In addition, when Thompson made the stop, he failed to radio a "signal seventeen" into police headquarters which is a required procedure designed to protect officers by keeping the police department apprised of their whereabouts. Shortly thereafter, Thompson was discharged by the town under the provisions of article VI, § 8 of the contract pertaining to probationary employees. The reasons cited by the town for discharging Thompson were both his failure to follow the orders of a superior and his violation of a routine police procedure.

The plaintiff grieved Thompson's discharge arguing that article VI, § 8 of the contract must be read in conjunction with article XIII, § 1, thereby requiring the town to show just cause for the discharge of a probationary employee. Based on its reading of the contract, the plaintiff claimed that the town had failed to meet its burden of showing just cause for dismissing Thompson and that his discharge was, therefore, in violation of the contract.

Because the parties disagreed as to the relevant contract provision to be applied, they were unable to reach an agreement on the issue to be submitted to the board. The board decided to reject the plaintiff's interpretation of the contract, stating that Thompson, a probationary employee, was not entitled to the protection of the "just cause" standard. It then adopted the town's formulation of the issue and framed the submission as follows: "[W]hether the discharge of Michael Thompson was consistent or in violation of Article VI, Section 8 [of the labor contract]." Citing Thompson's failure to follow the orders of his superior, the board rendered an award in favor of the town stating that "there was a reason for [his] termination and that

[because he was a probationary employee] the Town did, under Article VI, Section 8 have the right in its sole discretion to terminate [him]."

The plaintiff subsequently applied to the Superior Court to vacate the board's award. In support of its application to vacate, the plaintiff argued that the board had exceeded or imperfectly executed its powers in violation of § 52-418 (a) (4) both in framing the issue, because it "prejudged the merits of the dispute and precluded, ab initio any possibility of relief to be awarded to the plaintiff," and in rendering an award that sanctioned the disciplining of an officer who did not follow an order of his superior that is against public policy.

On March 24, 1987, the trial court issued a memorandum of decision in which it rejected both of the plaintiff's claims.[3] The court concluded that the board's adoption of the town's version of the issue, disregarding the "just cause" provision set out in article XIII, § 1 of the contract, was proper because any other formulation of the issue "would render Article VI, Section 8, surplusage." In rejecting the plaintiff's second claim that the board's decision countenanced an order contrary to public policy, the trial court distinguished the facts in this case from those of cases in which awards had been vacated as against public policy because they licensed serious violations of the law, and held that "as a pragmatic matter police departments do, and probably have to, adopt policies of selective enforcement when it comes to relatively minor failures

---

[3] Prior to the court's ruling, the town filed a motion to strike a portion of the plaintiff's application and a motion for nonsuit. Because the trial court denied the plaintiff's motion to vacate, both of the town's motions were rendered moot. Subsequently, the plaintiff motioned the trial court to open its judgment denying its application to vacate the arbitration award stating that the court prematurely ruled on its motion to vacate and should have ruled only on the town's motion to strike at that time. The Superior Court denied the plaintiff's motion to open on November 19, 1987.

to conform to motor vehicle laws, and I simply cannot buy the view that such a restraint on Thompson rises to the level of a violation of public policy."

On May 4, 1987, the plaintiff appealed the decision of the trial court to the Appellate Court. The plaintiff's claim on appeal is that the board exceeded its powers in violation of § 52-418 (a) (4) in that its award sanctioned the order of Sheehan "not to make any motor vehicle stops," and that this order is contrary to public policy. On April 28, 1988, we transferred the case to ourselves pursuant to Practice Book § 4023. Because Sheehan's order does not violate established public policy, we hold that the trial court did not err in refusing to vacate the board's award.

"We have consistently stated that arbitration is the favored means of settling differences and arbitration awards are generally upheld unless an award clearly falls within the proscriptions of § 52-418 of the General Statutes." *Board of Education* v. *AFSCME,* 195 Conn. 266, 270, 487 A.2d 553 (1985); *Board of Education* v. *Bridgeport Education Assn.,* 173 Conn. 287, 290, 377 A.2d 323 (1977); *International Union* v. *Fafnir Bearing Co.,* 151 Conn. 650, 653, 201 A.2d 656 (1964); *Board of Education* v. *Local 818,* 5 Conn. App. 636, 639, 502 A.2d 426 (1985). "A challenge of the arbitrator's authority is limited to a comparison of the award to the submission." *Bic Pen Corporation* v. *Local No. 134,* 183 Conn. 579, 584, 440 A.2d 774 (1981); see also *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 186, 530 A.2d 171 (1987); *Board of Education* v. *AFSCME,* supra, 271; *Caldor, Inc.* v. *Thornton,* 191 Conn. 336, 340, 464 A.2d 785 (1983), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985); *Bruno* v. *Department of Consumer Protection,* 190 Conn. 14, 18, 458 A.2d 685 (1983); *Bridgeport* v. *Bridgeport Police Local 1159,* 183 Conn. 102, 106, 438 A.2d 1171 (1981); *Board of Education* v. *Local 818,* supra. An award,

therefore, will normally be vacated only if it fails to conform to the submission, and the party challenging it has the burden of producing evidence sufficient to show that it does not conform to the submission. *Bic Pen Corporation* v. *Local No. 134,* supra, 585. " 'Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. *Meyers* v. *Lakeridge Development Co.,* 173 Conn. 133, 135, 376 A.2d 1105 [1977].' " Id., 584, quoting *Waterbury* v. *Waterbury Police Union,* 176 Conn. 401, 404, 407 A.2d 1013 (1979); *Caldor, Inc.* v. *Thornton,* supra, 340–41.

In spite of the general rule that challenges to an arbitrator's authority are limited to a comparison of the award to the submission, an additional challenge exists under § 52-418 (a) (4) when the award rendered is claimed to be in contravention of public policy. *New Haven* v. *AFSCME, Council 15, Local 530,* 208 Conn. 411, 416–17, 544 A.2d 186 (1988); *Stratford* v. *Local 134, IFPTE,* 201 Conn. 577, 590–91, 519 A.2d 1 (1986); *Board of Trustees* v. *Federation of Technical College Teachers,* 179 Conn. 184, 195, 425 A.2d 1247 (1979); *Stamford* v. *Stamford Police Assn.,* 14 Conn. App. 257, 259, 540 A.2d 400 (1988); *State* v. *Connecticut Council 4, CEU, AFSCME,* 7 Conn. App. 286, 290, 508 A.2d 806 (1986); *International Brotherhood of Police Officers* v. *Windsor,* 40 Conn. Sup. 145, 483 A.2d 626 (1984); *Avco Corporation* v. *Preteska,* 22 Conn. Sup. 475, 174 A.2d 684 (1961). This challenge is premised on the fact that the parties cannot expect an arbitration award "approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than

parties can expect a court to enforce such a contract between them." *Stamford* v. *Stamford Police Assn.,* supra, 259; *Board of Trustees* v. *Federation of Technical College Teachers,* supra, 195. When a challenge to the arbitrator's authority is made on public policy grounds, however, the court is "not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award." *Board of Trustees* v. *Federation of Technical College Teachers,* supra. Accordingly, the public policy exception to arbitral authority should be narrowly construed and " '[a] court's refusal to enforce an arbitrator's interpretation of [collective bargaining agreements] is limited to situations where the contract as interpreted would violate "some explicit public policy" that is "well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.' " ' *[United Paperworkers International Union* v. *Misco, Inc.,* 484 U.S. 29, 43, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987)]; see *W. R. Grace & Co.* v. *Rubber Workers,* 461 U.S. 757, 766, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983) . . . ." *New Haven* v. *AFSCME, Council 15, Local 530,* supra, 417. The party challenging the award "bears the burden of proving that illegality or conflict with public policy is clearly demonstrated." Id. Therefore, given the narrow scope of the public policy limitation on arbitral authority, the plaintiff can prevail in the present case only if it demonstrates that the board's award clearly violates an established public policy mandate.[4]

---

[4] In the few cases where arbitration awards have been vacated on public policy grounds it was because they contravened a well defined public policy mandate. See *Board of Trustees* v. *Federation of Technical College Teachers,* 179 Conn. 184, 195, 425 A.2d 1247 (1979); *State* v. *Connecticut Council 4, CEU, AFSCME,* 7 Conn. App. 286, 290, 508 A.2d 806 (1986) (awards were set aside pursuant to General Statutes § 54-418 [a] [4] because they were found to be in direct conflict with the provisions of a state statute); *International Brotherhood of Police Officers* v. *Windsor,* 40 Conn. Sup. 145, 483 A.2d 626 (1984) (arbitration award set aside that upheld the disciplin-

The plaintiff claims that Sheehan's order directed Thompson not to enforce the state motor vehicle laws which directly conflicts with the public policy that requires police officers to have unbridled discretion to protect the safety of the citizens of the community for which they work. The public policy mandate on which the plaintiff relies is allegedly expressed in General Statutes § 54-1f (a), entitled "Arrest without a warrant. Pursuit outside precincts," which states in pertinent part that peace officers may act within their jurisdiction and "shall arrest" any person without a warrant who is in the commission of a crime in that jurisdiction. According to the plaintiff, when the history of § 54-1f (a) is studied, police officers have a " 'duty to arrest for any offense.' " Viewed in its historical context, the plaintiff claims § 54-1f (a) is a sufficient starting point on which to establish a public policy edict. We disagree.

Section 54-1f (a) has no application to the facts in the present case because Sheehan's order did not prohibit Thompson from making arrests under it. Rather, his order was to make no "motor vehicle *stops*." (Emphasis added.) Implicit in that order is that Thompson was to make no routine or investigative stops for minor infractions of the state motor vehicle laws. Section 54-1f (a) is not a motor vehicle law, but rather, is a criminal procedure statute that is invoked when police officers arrest, without a warrant, those who have committed the serious crimes set out in the state penal code. Had Thompson seen or been asked to respond to a serious crime, Sheehan's order would not have prohibited him from making an arrest pursuant to § 54-1f (a).

ing of a police officer for refusing to falsify an arrest warrant); *Avco Corporation* v. *Preteska*, 22 Conn. Sup. 475, 174 A.2d 684 (1961) (arbitration board was held to have exceeded its authority when the award rendered was found to contravene public policy because it called for the reinstatement of an employee who had been convicted under a state statute for gambling on his employer's premises).

A perusal of the state motor vehicle laws set out in title 14 of the General Statutes, reveals no statute creating a duty requiring police officers to stop and investigate every person they observe violating the state traffic laws. General Statutes § 14-138 states that the commissioner of motor vehicles *may* call upon the state police to help aid in enforcing the laws pertaining to motor vehicles and highway use. The statute also states that "[t]he state police shall, upon such request, make arrests in all cases of violations . . . which they witness or upon speedy information thereof." This section would apparently apply to municipal police officers also. See General Statutes § 7-281. To date, however, there is no evidence of a request by the commissioner requiring police officers to make investigative stops or arrests in every instance where they observe a possible minor violation of the motor vehicle laws. .

In addition to the absence of any statute or administrative ruling establishing a duty requiring police officers to stop every person they see violating traffic laws, there is no case law setting forth such a policy mandate. While the United States Supreme Court and federal court cases cited by the plaintiff do state that police officers have a duty to preserve law and order, those cases are not on point.[5]

---

[5] The plaintiff cites three primary cases. In the first case, *Cady* v. *Dombrowski,* 413 U.S. 433, 440–42, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973), a search and seizure case, the plaintiff relies on a general discussion by the United States Supreme Court of the "community caretaking functions" state and local police officers perform. While the court's discussion does indicate that police officers have a great deal of contact with motor vehicles and often make investigative stops, it creates no public policy regarding motor vehicle stops. Also cited by the plaintiff are *United States* v. *Markland,* 635 F.2d 174 (2d Cir. 1980), cert. denied, 451 U.S. 991, 101 S. Ct. 2332, 68 L. Ed. 2d 851 (1981), and *Thurman* v. *Torrington,* 595 F. Sup. 1521 (D. Conn. 1984), for the proposition that it is a police officer's duty to preserve law and order. Neither of these cases, however, dealt with the enforcement of traffic laws. In *United States* v. *Markland,* supra, the court

Absent a clear contrary policy statement by the legislature or the agencies empowered to enforce the motor vehicle laws in this state, we are inclined to agree with the trial court that as a practical matter, police departments, operating with limited resources, may on occasion adopt policies of selective enforcement in cases involving relatively minor infractions of the motor vehicle laws. Orders, such as the one in the present case, do not hinder an officer in exercising his discretion to carry out his duty to protect the community to the extent that they clearly rise to the status of a violation of established public policy.

Finding that the plaintiff has no explicit public policy on which to rely, we are bound by the decision of the board. *New Haven* v. *AFSCME, Council 15, Local 530,* supra. We find, therefore, that the trial court did not err in refusing to vacate the board's award.

There is no error.

In this opinion SHEA, COVELLO and HULL, Js., concurred.

ARTHUR H. HEALEY, J., dissenting. I cannot agree with the majority, but would find error and remand this matter with direction to vacate the award of the Connecticut board of mediation and arbitration (board).[1]

Initially, I note that, despite the contentions of the town of Watertown (town), *the* reason for the board's decision was: "The majority of the Panel finds that the

---

validated a police officer's seizure of a container of alcoholic beverages at the scene of an accident based on his duty to protect society. *Thurman* v. *Torrington,* supra, involved a civil rights action in which the plaintiff was assaulted by her estranged husband after the defendant police officer failed to respond to her calls.

[1] The board denied Michael Thompson's grievance by a vote of two to one with the labor member dissenting.

reason for the discharge of the grievant, Michael Thompson was for his failure to obey the orders of his superior, Sergeant Sheehan."[2] The board's finding of facts, by which we are bound, states that the grievant was given orders by his supervisor Sergeant James Sheehan not to make "any motor vehicle stops." That finding also discloses that "[t]he reason for this order [of Sergeant Sheehan] was that the grievant at the time was involved in receiving training at the Police Academy and the Town did not want the grievant involved in court appearances which would keep him from receiving training at the Academy."[3]

---

[2] The failure to radio a "signal seventeen" to police headquarters, which the majority implies was *also* a reason for the board's decision, is clearly not so; the opinion of the board demonstrates that this is not so. The opinion of the board is the following: "In regard to the problem at hand, the Panel finds that the termination of the grievant was proper. The Panel relies on Article VI, Section 8 of the Labor Contract between the parties which states that the Town may terminate a probationary employee at its sole discretion, for any reason whatsoever. This Panel ruled earlier that this matter was arbitrable and that the grievant was entitled to use the grievance procedures set forth in the contract. Although being able to use the grievance procedure, the grievant is not entitled to the protection of just cause as set forth in the grievance procedure. The contract itself must be read as a whole and the grievance procedure as set forth in the contract in relation to probationary officers must be amended and modified by Article VI, Section 8 of the contract. Based on this, the majority of the Panel finds that there was a reason for the grievant's termination and that the Town did, under Article VI, Section 8 have the right in its sole discretion to terminate the grievant, as he was a probationary officer. The majority of the Panel finds that the reason for the discharge of the grievant, Michael Thompson was for his failure to obey the orders of his superior, Sergeant Sheehan."

[3] The board's finding of facts in full were the following: "Michael Thompson the grievant in this matter was a probationary officer working for the Town of Watertown Police Department. On January 5, 1985 the grievant was assigned to patrol with an Auxiliary Officer. The grievant was given orders by his supervisor Sergeant James Sheehan not to make any motor vehicle stops. The reason for this order was that the grievant at the time was involved in receiving training at the Police Academy and the Town did not want the grievant involved in court appearances which would keep him from receiving training at the Academy. The grievant did on January 5, 1985 make a motor vehicle stop and in addition failed to call in a signal seventeen which would indicate to the police department that he was stop-

The majority states that: "Because Sergeant Sheehan's order does not violate established public policy, we hold that the trial court did not err in refusing to vacate the board's award." I cannot agree with this holding that is, in my opinion, based upon several conclusory justifications. The first is that "Sheehan's order did not prohibit Thompson from making arrests under it. Rather, [Sheehan's] order was to make no 'motor vehicle *stops*.'" (Emphasis in original.) Without making any substantive distinctions with any basis in the record, the majority hastens to say: "Implicit in that order is that Thompson was to make no routine or investigative stops for minor infractions of the state motor vehicle laws." Apart from the fact that there is no basis in the record for this distinction, "no stops" reasonably means "no stops," regardless of the nature of the law that may have been violated. There was, contrary to the assertions of the majority, nothing implicit in Sheehan's order to Thompson "not to make *any* motor vehicle stops." (Emphasis added.) The majority specifically states that, despite the unequivocal order of Thompson's superior, "[o]rders, such as the one in the present case, do not hinder an officer in exercising his discretion to carry out his duty to protect the community to the extent that they clearly rise to the status of a violation of established public policy." This is a troublesome and discomforting resolution of the plaintiff's complaint of Thompson's absolute discharge from police duties because he disobeyed his superior's order not to make "*any* motor vehicle stops." This order was given because the town, under the board's finding, "did not want [Officer Thompson] involved in court appearances which would keep him from receiving training at the [Police] Academy."

---

ping a motor vehicle. The grievant was thereafter terminated by the Watertown Police Department under the provisions of Article VI, Section 8 of the Labor Conract between the parties."

Although I disagree with the result reached by the majority, I agree with the majority that it has been our consistent policy to foster settling differences voluntarily by arbitration. Moreover, arbitration awards are generally upheld unless "an award clearly falls within the proscriptions of § 52-418 of the General Statutes." *Board of Education* v. *AFSCME,* 195 Conn. 266, 270, 487 A.2d 553 (1985). While the general rule is that challenges to an arbitrator's authority are limited to a comparison of the award to the submission, there exists an additional challenge under § 52-418 (a) (4), where the award rendered is alleged to be in contravention of public policy. *New Haven* v. *AFSME , Council 15, Local 530,* 208 Conn. 411, 416–17, 544 A.2d 186 (1988); *Stratford* v. *Local 134, IFPTE,* 201 Conn. 577, 590–91, 519 A.2d 1 (1986); *International Brotherhood of Police Officers* v. *Windsor,* 40 Conn. Sup. 145, 483 A.2d 626 (1984); *Avco Corporation* v. *Preteska,* 22 Conn. Sup. 475, 174 A.2d 684 (1961).[4] That challenge allows an exception with respect to matters of public policy generally because arbitrators exceed their authority if their award orders a party to engage in conduct that is patently illegal or in clear violation of public policy. *New Haven* v. *AFSCME, Council 15, Local 530,* supra, 416. "In such a case, we are not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award." *Board of Trustees* v. *Federation of Technical College Teachers,* 179 Conn. 184, 195, 425 A.2d 1247 (1979). "Awards which con-

---

[4] Federal and state courts have indicated that labor arbitrators' awards that contravene public policy may be vacated. See, e.g., *Local 453* v. *Otis Elevator Co.,* 314 F.2d 25 (2d Cir.), cert. denied, 373 U.S. 949, 83 S. Ct. 1680, 10 L. Ed. 2d 705 (1963); *International Brotherhood of Police Officers* v. *Windsor,* 40 Conn. Sup. 145, 483 A.2d 626 (1984); *Avco Corporation* v. *Preteska,* 22 Conn. Sup. 475, 174 A.2d 684 (1961); *Black* v. *Cutter Laboratories,* 43 Cal. 2d 788, 278 P.2d 905 (1955), cert. dismissed, 351 U.S. 292, 76 S. Ct. 824, 100 L. Ed. 1188 (1956); *Western Union Telegraph Co.* v. *American Communications Assn.,* 299 N.Y. 177, 86 N.E.2d 162 (1949).

travene the public policy of a state exceed the powers of an arbitrator and are illegal and unenforceable." *Avco Corporation* v. *Preteska,* supra, 480; see *International Brotherhood of Police Officers* v. *Windsor,* supra, 147; *Black* v. *Cutter Laboratories,* 43 Cal. 2d 788, 278 P.2d 905 (1955), cert. dismissed, 351 U.S. 292, 76 S. Ct. 824, 100 L. Ed. 1188 (1956). There is little question but that "public policy exceptions to arbitral authority should be narrowly construed . . . . " *New Haven* v. *AFSCME, Council 15, Local 530,* supra, 417.

I recognize that each case, especially in this narrow public policy exception area, should be searchingly analyzed on its own facts. This becomes pointedly crucial where here there must be a resolution between two conflicting public policies. On the one hand, there is the public policy of fostering, by limited judicial intrusion, the voluntary system of dispute resolution through arbitration. See, e.g., *Naugatuck* v. *AFSCME,* 190 Conn. 323, 326, 460 A.2d 1285 (1983); *Middletown* v. *Police Local, No. 1361,* 187 Conn. 228, 230, 445 A.2d 322 (1982). On the other hand, there is the competing public policy that the police have the duty to obey and enforce the law to protect and preserve the public welfare. See, e.g., *State* v. *Donovan,* 132 N.J.L. 319, 321, 40 A.2d 546 (1945); *State* v. *Stevens,* 203 N.J. Super. 59, 495 A.2d 910 (1984).

It should be made clear that I understand that all too often police personnel and resources available to preserve life and property and to enforce the law as they have undertaken to do are hardly sufficient to perform this task as fully as they desire. The award in this case did not approve or disapprove the allocation of scarce police personnel but has to do solely with the discharge of the grievant Thompson. It should be made clear that it is one thing to *order* a policeman *not* to do something that it is his duty to do, but it is quite another matter, not only throughout the arbitration procedure but also

thereafter, to invoke judicial approbation of the arbitration award to cashier him for doing what he was hired to do—enforce the law.

In its opinion, the majority extends legality to this award and finds no violation of public policy. With that I cannot agree. To say that all Thompson's superior ordered was that he not make "routine or investigative" motor vehicle "stops" granitizes form over substance because, despite what the majority says, there is nothing "implicit" in Sheehan's order that Thompson was to make "no routine or investigative stops for minor infractions of the state motor vehicle laws." The board did not so find. Moreover, the board's decision offers absolutely no distinction between different types of motor vehicle stops, a distinction which the majority makes in a conclusory fashion. Insofar as the town was concerned, the board decision does show that Sheehan's order was given in order to prevent Thompson's having to go to court. Any stop at all might have resulted in the necessity of Thompson's appearing in court and, thus, there is no basis for the majority's distinction among different types of stops.

It is for the legislature to determine public policy. See, e.g., *International Business Machines Corporation v. Brown,* 167 Conn. 123, 135, 355 A.2d 236 (1974); *Consolidated Diesel Electrical Corporation v. Stamford,* 156 Conn. 33, 39, 238 A.2d 410 (1968); *Old Colony Gardens, Inc. v. Stamford,* 147 Conn. 60, 64, 156 A.2d 515 (1959). The legislature spoke on this not only when they enacted statutes concerning arbitration but also in the many statutes on motor vehicle violations. Both classes of these statutes, i.e., arbitration and motor vehicle, *are* the public policy of this state. The arbitration statutes encourage the voluntary resolution of disputes. The motor vehicle statutes also state public policy because they endeavor to promote the safe and proper use of the highways throughout the state. A

court should not lightly interfere with the award of an arbitration panel where there may be conflicts between the two public policies involved. It should, however, not be reluctant to do so where the award, as in this case, derogates the stronger policy of the two. Confirming this award, under the unique facts of this case, judicially affirms the discharge of a police officer for performing the duty that he was hired to do but which he was ordered not to do on the date involved. On this record, I firmly believe that to cashier Officer Thompson by affirming the arbitration award violates public policy and falls squarely within the narrow public policy exception of General Statutes § 52-418 (a) (4).

Therefore, I dissent.