[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE:APPLICATION TO VACATE ARBITRATION AWARD
Kenneth Dolan, a City of Bridgeport Police Officer, was accused by the Bridgeport Police Department of shoplifting on May 27, 1989 at an A P Supermarket while working there on an outside, overtime assignment. Officer Dolan was also accused of shopping while on duty and of giving false statements to the Department's Office of Internal Affairs during the investigation of the charges.
Hearings were held on the charges in July of 1990 before the Bridgeport Board of Police Commissioners ("Commissioners"). At those hearings, Dolan was represented by counsel and the Commissioners took evidence. On July 19th, 1990, the Commissioners found that Dolan had committed the charged offenses and discharged him.
The defendant, Police Department Employees, Local 1159, Council #15, AFSCME, AFL-CIO (hereinafter referred to as the "defendant" or the "union") immediately filed for arbitration before the Connecticut Board of Mediation and Arbitration ("arbitrators").
The arbitrators ruled in favor of the union and ordered Dolan reinstated with back pay. The award was based on the CT Page 5156 arbitrators finding that the city had violated a provision of the collective bargaining agreement ("CBA") between the parties referred to as the "Bill of Rights." Article 32, section 2 of the CBA states, in relevant part:
 Rights of Law Enforcement Officers Under Investigation. Whenever a law enforcement officer of the City of Bridgeport is under investigation or subjected to interrogation by members of his agency, for any reason which could lead to suspension, demotion, dismissal or criminal charges, such investigation or interrogation shall be conducted as nearly as is practicable under the following conditions: (A) No complaint by a civilian against a police officer, shall be entertained, nor any investigation of such complaint be held, unless the complaint be duly sworn by the complainant before an official authorized to administer oaths. Prior to a disciplinary hearing, which follows receipt of such sworn complaints, a copy of all sworn statements will be submitted to the accused.
The arbitrators found that the city violated this provision of the Bill of Rights as no sworn civilian complaint was obtained. The remedy ordered was reinstatement with back pay.
The city filed an application in this court to vacate the award claiming that:
1. the arbitrators exceeded their powers because the claimed violation of the Bill of Rights was not arbitrable,
2. the award failed to draw its essence from the agreement and constituted a manifest disregard of the law, and,
3. the award violated public policy as it requires the reinstatement of a police officer who, after a full and properly conducted hearing, was found to have committed larceny while in uniform.
The defendant union contends that the award should be upheld because: CT Page 5157
1. the city agreed that the claimed violation of the Bill of Rights should be submitted to the arbitrators; therefore, there is no merit to the nonarbitrability claim,
2. the award conformed to law as there was an agreed submission and reinstatement was a remedy that was within the power of the arbitrators, and,
3. there is no public policy violation because: (a) Dolan has never been convicted of any crime and (b) the arbitrators found that the investigation was so tainted that, on the merits, the discharge was without just cause.
The court agrees with the city's claim that the award violates public policy and must be vacated. Each of the city's claims will be addressed seriatim.
 I ARBITRABILITY
Article 6, section one of the CBA states, "No permanent employee shall be removed, dismissed, discharged, suspended, fined or reduced in rank, except for just cause." (Emphasis added.)
The union filed its grievance under Article 6, section three of the CBA, which states, in relevant part:
 "If an employee is so disciplined, after a hearing by the Board of Police Commissioners, and in the judgement (sic) of such employee, and/or the union, this action is taken without just cause, the union . . . may submit such dispute to arbitration. . . . Such Board of mediation and arbitration shall have the power to . . . reinstate a suspended or discharged employee with full back pay." (Emphasis added.)
The city has no quarrel with the proposition that, under these sections of Article 6, the union had a right to arbitrate whether Dolan's dismissal was for just cause. The arbitration award, at pages one and two states that the agreed submission was as follows: CT Page 5158
"PRELIMINARY ISSUE
 At the November 16th, 1990, arbitration hearing, the parties and the arbitration panel agreed that the panel would decide on the following preliminary issue prior to proceeding forward on the merits of the case:
 Did the city violate the Bill of Rights set forth in the collective bargaining agreement?
If so, what shall be the remedy?"
The city argues that it did not agree to the submission as framed in the arbitration award. In support of its claim that this indeed was an agreed upon submission the defendant, in its brief, offered the following quote from the transcript of the hearing before the arbitrators:
 "Mr. Maxwell: Well, I would agree that issue is an issue which if it was found in favor of the grievant would probably carry the matter in favor of the grievant. Because, simply if this board found that there was a substantial defect in the process of getting this entire matter under way, they may find that completely wiped out anything that took place after that.
 Although, this board may find out that there was a technical defect. There was not prejudice to the officer, it didn't harm him in anyway because he was — a full and fair opportunity to go on. So, it would be my position that even if somebody would define that there was a minor or technical defect here that it wouldn't make any difference anyway.
 Even if there was a major defect. Unless this board felt that it was such, it would be our position that there was simply no prejudice to the officer for any violation of this." CT Page 5159
The city argues that this concededly accurate quote in the defendant's brief was an improper submission to the court. However, the arbitrators stated in the award that the submission was agreed to by the parties and the city offered nothing in support of its contention that it was not so agreed.
The city also claims that, despite any alleged agreement, the Bill of Rights issue should not have been considered by the arbitrators as it was not raised in the original grievance. That claim was rejected by the arbitrators and the city offers no reason why that claim should vitiate the agreement as to the submission. No determination of arbitrability pursuant to Connecticut General Statutes § 52-415[1] was sought by the city.
The city next claims that the "narrow scope" of Article 6 is such that the question of arbitrability of a dispute under that section is for the court to determine. Article 6 is labeled "DISCIPLINARY ACTIONS." Section one, supra, includes dismissal among the disciplinary actions which may be taken against an employee for "just cause." Section three of Article 6, supra, specifically authorizes the submission of such disciplinary disputes under Article 6 to arbitration. The court agrees with the defendant that this was an agreed submission which was proper under Article 6.
The city's more vigorously pressed contention is that the parties cannot, even by agreement, submit a preliminary issue of a procedural irregularity in a dismissal to the arbitrators under Article 6 of the CBA. This is so, claims the city, because such dismissals can only be reviewed by the arbitrators on the ultimate issue of just cause.
The short answer to this claim is that the award states that it is based on just cause. The arbitrators stated in the award that "The concept of just cause incorporates various procedural as well as substantive requirements" and that failure to follow the bill of rights and department policies "resulted in a tainted investigation which affects the finding of just cause. . ."
Article 7 was cited in the award as one of the contractual provisions involved. That article deals with grievances and states: CT Page 5160
 Should any employee, or the union, feel aggrieved . . . concerning any matter or condition arising out of the employee-employer relationship . . . adjustment shall be sought as follows . . .: (Emphasis added.)
Article 7 goes on to outline a procedure for processing a grievance up through the Board of Police Commissioners. Section (d) of Article 7 provides: "If such grievance is not resolved to the satisfaction of the union by the police board within five (5) days after such meeting, the union may present such grievance in writing within ten (10) days thereafter of the written decision by the Board of Police Commissioners, to the Connecticut State Board of Mediation and Arbitration. Said Board shall hear and act on such dispute in accordance with its rules and render a decision which shall be final. . . ."
Although the arbitrators did not specifically cite Article 7 in their discussion, they were dealing with a grievance and necessarily relied on both Article 6 and Article 7. A procedural irregularity would be a matter arising out of the employee-employer relationship under Article 7 and as such could be the subject of an agreed submission to the arbitrators even where a dismissal is involved.
 II MANIFEST DISREGARD OF THE LAW AND ESSENCE OF THE CONTRACT CLAIMS
The city concedes that improper application of the law and erroneous factfinding are not grounds for a court to vacate an arbitrator's award, but asserts that the award is based on a manifest disregard of the law and does not derive from the essence of the contract.
The oft cited case of Trumbull v. Trumbull Police Local#1745, 1 Conn. App. 207, 470 A.2d 1219 (1984), summarizes the established principles with respect to judicial review of arbitration awards. The court states at pages 211-214:
 Courts favor arbitration as a means of settling differences and expediting the resolution of disputes. . . . The autonomous nature of the arbitration process must be respected by the courts. Arbitration is a CT Page 5161 remedy which is bargained for by the parties and they are free to negotiate with respect to the procedure to be employed. . . . It is axiomatic in this jurisdiction that any challenge to an award pursuant to General Statutes § 52-418(d)[2] on the ground that the arbitrators exceeded or imperfectly performed their powers is properly limited to a comparison of the award with the submission. . . . . In order to decide whether the arbitrators have exceeded their authority, the reviewing court must examine the submission together with the award and determine whether the award conforms to the submission. [Citations omitted.]
The great deference paid to arbitration awards is further illustrated by the principle that every reasonable presumption will be made in order to sustain an award. Bic PenCorporation v. Local #134, 183 Conn. 579, 440 A.2d 774 (1981).
The standard of review turns on whether the award is restricted or unrestricted. If there is no limiting or conditional language in this submission, then it is unrestricted.Bridgeport v. Bridgeport Police Local 1159, 183 Conn. 102, 106-107,438 A.2d 1171 (1981). Where the submission is unrestricted, "the award is . . . final and binding and cannot be reviewed for errors of law or fact." Milford Employees Assn. v. Milford,179 Conn. 678, 683, 427 A.2d 859 (1980).
Here the submission was indeed unrestricted, and a comparison of the submission with award clearly shows that the award conformed to the submission.
However, the city claims that the award should be vacated as it is not derived from the essence of the contract and is in manifest disregard of the law. First, the city claims that the remedy of reinstatement for a violation of the "Bill of Rights" is not authorized in the agreement as there is no penalty provided for a violation of such rights, therefore, the remedy is not derived from the essence of the contract. Secondly, the city claims that the arbitrators' finding that the procedural violation "tainted" the commissioners' finding and required reversal was an improper application of the criminal law exclusionary rule; therefore, the award is in manifest disregard of the law as this CT Page 5162 is a civil case.
Article 6, supra, provides a grievance procedure for "any matter . . . arising out of the employee-employer relationship. . . ." Whether the city violated any CBA provision and what remedy should be ordered for a violation would certainly be a matter arising out of the employee-employer relationship and, therefore, would derive from the essence of the contract. The arbitrators clearly had the power to order reinstatement as a remedy pursuant to Articles 6 and 7 of the Collective Bargaining Agreement as discussed above. A remedy is available under the agreement despite the lack of a "penalty" clause.
The city also relies on the language of Article 32, section 2, that such rights shall apply "as nearly as is practicable." That section states:
 RIGHTS OF LAW ENFORCEMENT OFFICERS UNDER INVESTIGATION. Whenever a law enforcement officer of the City of Bridgeport is under investigation or subjected to interrogation by members of his agency, for any reason which could lead to suspension, demotion, dismissal or criminal charges, such investigation or interrogation shall be conducted as nearly as is practicable under the following conditions. [Emphasis supplied.]
The "nearly as practical" language was interpreted by the arbitrators as not applicable to the circumstances here. The court cannot substitute its judgment for that of the arbitrators.
The cases cited by the city in support of its claim that the remedy of reinstatement, under the circumstances here did not derive from the essence of the contract are inapposite. They involve remedies which could not be justified by the contract language or directly contradicted the agreement of the parties.
In Bruno's, Inc. v. United Food Com. Wkrs. Intern., 858 F.2d 15, 29 (1988), the employer instituted a disciplinary policy for those cashiers who failed to charge customers for items in the lower rack of their shopping carts. In deciding grievances filed by employees who had been suspended under the new policy, the arbitrator found that the policy was unreasonable and, as a CT Page 5163 remedy, fashioned a new disciplinary policy. As the parties agreed that the suspensions were unjust, the issue became whether or not the remedy was proper. The court ruled that the agreement between the parties gave the employer the exclusive right to establish and maintain such rules. Although the arbitrator had the right to find a rule unfair, the arbitrator had no authority to create a new rule as the creation of such new rules flew in the face of the contract between the parties.
In Leed Architectural Products v. Local 6674, 916 F.2d 68
(2d Cir. 1990), the court upheld the arbitrators' finding that the employer had improperly negotiated privately with a union employee for a pay raise in violation of the collective bargaining agreement making the union the sole bargaining representative on wage matters. By the same token the remedy fashioned, which raised the grievant's pay to that privately negotiated with the other employee, was improper as it was also in violation of the contract language calling for collective bargaining of all wages.
In Connecticut Light Power Co. v. Local 420,International Brotherhood of Electrical Workers, 718 F.2d 14
(2d Cir. 1983), the employer reduced the work crews for the installation of pole mounted transformers from three persons to two persons. Resulting grievances produced two conflicting results. One arbitrator found that the reduction was improper and ordered the company to use three person crews in the future, while the other arbitrator found that the reduction to two persons was proper. The court was faced with conflicting awards, each of which was entitled to the customary deference given by courts to such awards. The court stated that the basis for such deference was the arbitrators' expertise and knowledge in the field which judges do not have. "So long as they draw their essence from the collective bargaining agreement, arbitration awards will not be vacated by a court. . . ." Id., p. 19. The court held that because of this rule, inconsistent awards were proper as long as each drew its essence from the agreement. However, in this case the award ordering three person crews in the future went beyond the particular conflict before the arbitrator and purported to affect future grievances. The court stated that the arbitrator in the later case was not bound by the earlier case. The court did not have to decide whether each case drew its essence from the collective bargaining agreement, rather the court found that the ruling as to future cases set up a conflict which the court had to resolve. In doing so, the court was required to select the award which conformed "most closely to the intent of the parties." Id., CT Page 5164 p. 21. In reviewing the contract language, the court decided that the second award, which found no violation in the reduction in crew size, most closely conformed; therefore, the court vacated the first award and confirmed the second.
In the instant case the contract language authorized the arbitrators to hear and resolve a dispute arising out of the dismissal of an employee. Reinstatement is clearly one of the authorized remedies under the contract language itself and derives from the essence of the agreement
The city next claims that the arbitrators' use of the criminal law "tainted evidence" concept was in manifest disregard of the law that such concepts are not appropriate in a civil case.
It is axiomatic that in an unrestricted submission the arbitrators are not bound to follow the law in deciding the issues presented to them. Bridgeport v. Bridgeport Police Local 1159,183 Conn. 102, 107, 438 A.2d 1171 (1981). Even if the court agreed with the city that criminal law evidence exclusion concepts do not generally apply to civil cases, what the arbitrators did would be at best an unreviewable mistaken application of the law. The city points to no case or authority which states that using such a criminal law concept is a "manifest disregard of the law."
Further, it is not clear that what the arbitrators did was a complete incorporation of the criminal law concept of tainted evidence. As a general rule, illegally seized evidence cannot be used in the state's case in chief against a defendant.Weeks v. United States, 232 U.S. 383, 58 Lawyers Ed. 652,34 S.Ct. 341 (1914); Mapp v. Ohio, 367 U.S. 643, 815 S.Ct. 1684,6 L.Ed.2d 1081 (1961).[3]
In the instant case, the arbitrators did not rule that the police board should have excluded evidence seized in violation of the Bill of Rights in the contract. After finding that the Bill of Rights provision had in fact been violated, the arbitrators stated at page 10 of the award:
 The concept of just cause incorporates various procedural as well as substantive requirements. The panel is persuaded that the union is correct in its position that the department's failure to follow the Bill of Rights and its own internal policies resulted CT Page 5165 in a tainted investigation which affects the finding of just cause for the dismissal of Officer Dolan.
The award is silent as to how or why the Bill of Rights violation tainted the investigation. The arbitrators could have reached their conclusion based on some notion that the evidence obtained in violation of the Bill of Rights should have been excluded. On the other hand, they could have reached the same conclusion if they were of a mind that the violation somehow rendered the evidence too unreliable to support a finding of just cause. One simply cannot determine their rationale from the conclusory language of the award.
Every reasonable presumption will be made in order to sustain an award. Bic Pen Corp. v. Local 134, supra. The court is unpersuaded that the arbitrators conclusions, however reached, are in manifest disregard of the law.
 III THE PUBLIC POLICY CLAIM
The city claims that upholding the award would violate public policy because it would require the reinstatement of Officer Dolan in the face of the commissioners unchallenged findings that he had stolen items from the very store he was assigned to protect and then lied to police investigators about the incident.[4] The city claims that the award is particularly egregious because the commissioners afforded Dolan a full hearing in which all of his due process rights were honored, including the rights to counsel and cross-examination.
The union concedes that the court has the power to set aside an award which violates public policy, but contends there was no such violation here because: (1) the dismissal was properly arbitrable and the city got exactly what it bargained for by the agreed upon submission, even though it does not like the result; (2) the arbitrators did in fact find that there was no just cause for Dolan's dismissal; and, (3) Dolan has never been convicted of any crime, therefore, there could be no public policy violation in reinstating him.
The parties have ably and extensively briefed the public policy issues, and there seems to be no disagreement on the CT Page 5166 obvious proposition that public policy dictates that police officers should be honest and law-abiding. This simple proposition, amply supported by reason and common sense, is also supported by laws and legal precedents. Public policy must be well defined and not merely vague, general considerations of supposed public interest. In Watertown Police Union Local 591 v.Watertown, 210 Conn. 333, 339-41, 555 A.2d 406 (1989), our Supreme Court stated
 "When a challenge to the arbitrator's authority is made on public policy grounds, however, the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award. . . . Refusal to enforce an arbitrator's interpretation of [collective bargaining agreements] is limited to situations where the contract as interpreted would violate some exquisite public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. . . . The party challenging the award bears the burden of proving that illegality or conflict to public policy is clearly demonstrated. . . . Therefore, given the narrow scope of the public policy limitation on arbitrable authority, the plaintiff can prevail in the present case only if it demonstrates that the board's award clearly violates an established public policy mandate." [Internal quotation marks and citations omitted.]
Constitutions, statutes and applicable legal precedents define public policy. Stratford v. Local 134, 201 Conn. 577, 590
(1945; Muschany v. United States, 324 U.S. 49, 66, 655 Ct. 442,89 L.E. 744 (1945), states that public policy can also include a "plain indication . . . through long governmental practice . . . or of violations of obvious ethical or moral standards. . . ."
Connecticut General Statutes § 7-276 provides in relevant part that police officers ". . . shall hold office during goodbehavior and until removed for cause upon written charges and CT Page 5167 after hearing." [Emphasis supplied.] The policy and procedure manual of the Bridgeport Police Department states: "The policy of the Bridgeport Police Department is to insure that all sworn members maintain an exemplary standard of personal integrity and ethical conduct in their relationship with other employees and the community." (Respondent's exhibit A.) The code of ethics, § 1.6.4 of the policy and procedure manual states: "The public demands that the integrity of its law enforcement officers be above reproach, and the dishonesty of a single officer may impair public confidence and cast suspicion upon the entire department. . . . An officer must scrupulously avoid any conduct which might compromise the integrity of himself, his fellow officers or the department."
The regulations governing the Bridgeport Police Department emanate from the statutory authority of General Statutes § 7-276, supra, and public policy clearly mandates that officers should be honest and law abiding. The court agrees with the city's contention that, under the circumstances of this case, the award violates this public policy and must be vacated.
The union's contentions that the dismissal of Dolan was an arbitrable matter and that the city got what it bargained for through the agreed on submission are correct. However, it is a firmly entrenched principle of contract law that the courts will not enforce the parties' agreement where to do so would violate public policy. Watertown Police Union Local 591 v. Watertown, supra, Beit v. Beit, 135 Conn. 195, 63 A.2d 161 (1948);Niles-Bement-Pond Co. v. Amalgamated Local 405, 140 Conn. 32,97 A.2d 898 (1953). ". . . a collective bargaining agreement may well give an arbitrator the power to dispense his own brand of industrial justice, but the contract, and his power under it, are limited by, and must yield to, overriding public policy. This [award reinstating an employee discharged for gambling on company premises] clashes with that policy. It indulges crime, cripples an employee's power to support the law and impairs his right to prevent exposure to criminal liability." Local 453 v. OtisElevator, 201 F. Sup. 213, 218 (S.D. N.Y. 1967). In Avco Corp. v.Preteska, 22 Conn. Sup. 475, 174 A.2d 684 (1961), the defendant employee was convicted of gambling on the plaintiff's premises. The plaintiff discharged the defendant for "just cause" as a result of the conviction. Pursuant to a collective bargaining agreement, the defendant filed a grievance which resulted in this reinstatement with back pay. The court voided the arbitration award as it violated the public policy underlying then General Statutes § 53-298 which imposed a duty on occupants (such as the CT Page 5168 plaintiff) of premises to prevent gambling on such premises.
The union also contends that the effect of the award is not to reinstate a "dishonest" officer because Dolan was never convicted of any crime in connection with these incidents. Actual conviction of any crime or crimes involved in the activity for which dismissal has been ordered is not necessary. In Gaudette v.Board of Public Safety, 20 Conn. Sup. 147, 150, 127 A.2d 836
(1956), the discharged police officer was acquitted of the criminal charges which arose out of his complicity in the theft of a lawn mower. The court ruled that the acquittal was not relevant to the defendant board's consideration of the same conduct in the discharge hearing. The discharged employee's conduct is the focus of the injury, not conviction or acquittal of the related criminal charges.
The police commission in the present case found that: "The charges of which the officer was found guilty — especially larceny while on duty and while wearing his police uniform — are so serious as to warrant a penalty that prevents this person from serving as a police officer in the future. The citizens of Bridgeport must have police officers who are themselves free of serious violations of law and who can, therefore, impartially enforce the laws, including major laws such as those prohibiting larceny." (Commissioner's decision, page 2.)
The evidence which led to the findings of the commission was not reviewed for just cause by the arbitrators; rather they simply found a violation of the Bill of Rights in not proceeding by way of a sworn civilian complaint or under the Internal Affairs investigatory procedure by way of a request from the Superintendent of Police or the Board of Police Commissioners. The conclusory language of the award cannot cure the failure to review the award on the merits.
The award states: "The concept of just cause incorporates various procedural as well as substantive requirements. The panel is persuaded that the union is correct in its position that the department's failure to follow the Bill of Rights and its own internal policies resulted in a tainted investigation which affects the finding of just cause for the dismissal of Officer Dolan." No explanation was offered as to how or why initiating the investigation into alleged criminal conduct by Officer Dolan on other than the sworn, written complaint of a civilian or commencing the Internal Affairs investigation on a CT Page 5169 memo other than a request from the Superintendent or Board of Police Commissioners tainted the investigation. As the award states that the union was correct in its position that the violations tainted the investigation, it is necessary to examine the claims of the union in this respect. Those claims from page seven of the award are as follows:
 "The union argues that the alleged violation of the contractual Bill of Rights severely prejudiced the grievant. It maintains that had the required procedure been followed, if Mr. Lyle had to comply with the formalities of writing out a statement and swearing to it, there probably would never have been a hearing on the complaint in this case.
 It relies on the fact that the head of security of A P was extremely disturbed at the manner in which the Boston Avenue store personnel handled the alleged shoplifting matter. This concern was expressed by Mr. Lyle to both Officer Straub and Captain Kelly and reconfirmed in evidence before the panel. The union argues that the evidence against Officer Dolan hinged upon the recollections and reliability of supermarket personnel, rather than on any clear cut evidence — instead of clearing up any discrepancies with Officer Dolan on the spot, he was told by store personnel that it was okay to take his groceries home.
 The union believes that but for the investigation initiated by Internal Affairs, that the A P would have been unable to swear out a complaint due to the fact that they failed to secure any evidence concerning the alleged shoplifting by Officer Nolan (sic).
With respect to the city's failure to follow its Internal Affairs investigatory procedure, the position of the union stated at page seven of the award is as follows:
The city maintains that its investigation was CT Page 5170 authorized pursuant to department policy and procedure, 1.28.4(c)(2), as testified to by Sgt. Middleton, rather than in accordance with the Bill of Rights. It offered as proof of written authorization of such investigation a memo from Acting Chief Izzo to Sgt. Connolly dated June 14, 1989.
 The union finds several flaws in this defense by the city. First, the "complaint" which generated the internal affairs and subsequent pre-termination hearing by the police board did not emanate from the office of the Superintendent/Chief or the Board of Police Commissioners as required by section 1.28.4(c)(2) for the internal investigation to be triggered. It emphasizes the testimony of Sgt. Middletown who indicated that it was Sgt. Connolly's notes that began the file and, further, that the memo from Izzo is dated one day after the investigation was initiated by the taking of Gordon's statement by Internal Affairs.
There is nothing in these claims to indicate that the investigation was skewed in any manner by the department's failure to initiate the investigation in accordance with the Bill of Rights and the Internal Affairs procedures. Rather, it relies on the claim that, if Mr. Lyle had to formally write out a statement and swear to it, there probably never would have been a hearing in this case. This is sheer speculation. The union further relies on Mr. Lyle's expressed concern about the manner in which the store personnel handled the shoplifting matter and the fact that the Commission had to rely upon the recollections and reliability of supermarket personnel in the hearings. The court can see no reason why Lyle's concerns would have had any bearing on the reliability of the investigative process. In administrative proceedings, as well as in court trials, the triers rely on the recollections of witnesses. There is nothing in the union's position that explains what "clear evidence" was compromised or overlooked by the procedural violations nor is there any explanation as to how these procedural violations prevented "the clearing up of any discrepancies with Officer Dolan on the spot" or would have prevented store personnel from telling Dolan that it was "okay" to take his groceries home. There is nothing in the CT Page 5171 award to indicate that the procedural violations in any way resulted in an unfair investigation in fact.
"The honesty of police officers is central to our criminal justice system." International Brotherhood of PoliceOfficers v. Windsor, 40 Conn. Sup. 145, 148, 483 A.2d 626 (1984). Here, the Police Commission has found that an officer stole merchandise from a store he was assigned to protect and lied to investigating officers. These findings came after a full hearing in which the officer was accorded all of his due process rights. The arbitrators' award ordered his reinstatement because of nonprejudicial procedural violations without, in fact, considering whether there was just cause for the officer's termination. The city has shown that judicial enforcement of this award would clearly violate the strong public policy favoring law-abiding and honest police officers.
For the foregoing reasons, the award is vacated.
E. EUGENE SPEAR, JUDGE