[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: APPLICATION TO VACATE ARBITRATION AWARD
On June 13, 1997, the City of Bridgeport (the plaintiff) filed an application to vacate an arbitration award in which the arbitrator found that Kenneth Bruno (the grievant), a former member of the Bridgeport City Supervisors Association (the defendant), was entitled to compensatory benefits under the parties' collective bargaining agreement. The following facts are pertinent to the resolution of this issue. CT Page 11162
During the relevant period, the grievant was employed by the plaintiff as Recreation Superintendent and later as Program Site Coordinator in the Board of Education. On July 12, 1993, the Mayor, the grievant and counsel of the defendant entered into an agreement to settle an earlier grievance filed by the defendant on behalf of the grievant whereby the grievant agreed to retire upon the completion of twenty years of municipal service. On June 24, 1994, the grievant requested from the Civil Service Commission that he be compensated in regards to his accumulated sick days, personal days, vacation days, and compensatory time days. On June 27, 1994, the grievant was notified that the Director of Labor Relations (DLB) had denied his request for compensation for time worked over and above work hours (comp time). On June 29, 1994, the defendant grieved the decision of the DLB to the Labor Relations Officer, who denied the grievance, following which the defendant demanded arbitration pursuant to the arbitration provision in the parties' collective bargaining agreement.
The following issues were submitted to the arbitrator: "Did the City of Bridgeport violate the collective bargaining agreement by not paying the grievant, Kenneth Bruno, compensation time? If so, what shall the remedy be?"
The arbitrator found sections 7.1 and 7.1A of the collective bargaining agreement as well as the stipulation regarding all city employees subject to city hall hours (the stipulation) attached thereto to be relevant to the issues to be decided. Section 7.1 provides, in pertinent part: "All employees covered by this agreement will work a 40 hour week, except those employees who work the City Hall hours. . . ." Section 7.1A provides, in pertinent part: "Employees who currently work the City Hall hours shall continue to work the City Hall hours subject to the provisions above and in accordance with the stipulations ofExhibit A. attached." (Emphasis added.) The stipulation provides:
 "1. Effective January 1, 1984 and thereafter for the life of this contract City Hall hours will include, inter alia, closing of City Hall at 5:00 in the afternoon, and one hour for lunch.
 2. Department[s], including the Board of Education, which now start the work day prior to 9:00 a.m., shall continue such starting times, but the hours of work of such employees affected thereby, shall be CT Page 11163 correspondingly adjusted if necessary so that such employees will not be required to work more than thirty five (35) hours per week. Existing practices regarding City Hall hours for City Employees not inconsistent with the terms of this stipulation shall be continued."
(Emphasis added.)
The defendant asserted that "[t]here is a long standing past practice of paying comp time, and this practice is incorporated in provisions set forth in [the stipulation.]"
The arbitrator observed that there was no specific mention of comp time in the collective bargaining agreement. He, therefore, reasoned that the dispositive question was whether the term "existing practices" included the payment for comp time. At the hearing, Mr. Phillip Handy, Superintendent of Parks and Recreation Department, testified that he had "no personal knowledge" of any member of the defendant association being paid for comp time. Mr. Dennis Murphy, Director of Labor Relations for the plaintiff from December, 1991 to December, 1994, testified that, during his tenure, the plaintiff did not pay out accumulated compensation time to any employee belonging to the defendant association. Daniel E. Brennan, Jr., Chief Labor Negotiator for the plaintiff city from December of 1981 to 1985, testified that he had represented the city's interests in the negotiations of the terms of the stipulation. When asked to explain what was meant by the language contained in the stipulation, Brennan stated: "Well, there were a couple of issues floating around. . . . In addition, there had been a longstanding history in the City of compensating some of our unions rather than paying them overtime and this language was an attempt to keep the practice in place."[1] Mr. Brennan further testified that the plaintiff had made payments for comp time to members of the defendant association on "at least a couple" of occasions.
The arbitrator also noted that the plaintiff had acknowledged the existence of comp time in a memorandum dated January 11, 1996, from H. James Haselkamp, Jr., Director of Labor Relations, addressed to the heads of various city departments. In that memorandum, Haselkamp states that "[o]n Monday, January 8, 1996, City Hall was open only to essential employees due to Snow Blizzard Ginger. This was not a paid holiday. Therefore, eachemployee in your office must use accrued time such as vacation, sick, personal or comp time. If an employee does [not] have any time accumulated, the day will be an unpaid day." (Emphasis CT Page 11164 added.) Based on that evidence and relying in particular on the testimony of Brennan,[2] the arbitrator found that "there was past practice of paying comp time to retiring employees of the City of Bridgeport including those who were members of the [defendant]." Accordingly, the arbitrator awarded the Plaintiff the sum of $74,703.53 for comp time.
The plaintiff moves to vacate the award on the ground that the award violates public policy and is unenforceable because it rests on an implied contract to pay compensatory time which never received the approval of the City Council, and which has the direct effect of unexpectedly drawing down the public fisc in favor of an individual with no substantive right to the public funds claimed.[3] The defendant claims that the collective bargaining agreement is an express contract which was approved by the Common Council and ultimately signed by the Mayor.
Article 11 of the collective bargaining agreement provides, in pertinent part:
 "If the grievance is still unsettled, either party may, within fifteen (15) days after the reply of the labor relations officer is due, or within fifteen (15) days following receipt of the written reply by the labor relations officer, whichever period is later, by written notice to the other, request arbitration. . . . The arbitrator(s) shall limit the decision strictly to the application, meaning or interpretation of the provisions of this agreement. The arbitrator(s) shall not add to, nor subtract from, the terms of this agreement as written. The arbitration award shall be in writing and shall set forth the opinion and conclusions on only the issues submitted. The decision of the arbitrator(s) shall be final and binding on the parties. . . ."
"If the parties have agreed in the underlying contract that their disputes shall be resolved by arbitration, the arbitration clause in the contract is a written submission to arbitration."Vail v. American Way Homes, Inc., 181 Conn. 449, 451,435 A.2d 993 (1980). "The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review. In the absence of any such qualifications, an agreement is unrestricted." CT Page 11165Garrity v. McCaskey, 223 Conn. 1, 5, 612 A.2d 742 (1992).
"Even in the case of an unrestricted submission, we have, however, recognized three grounds for vacating the award: (1) the award rules on the constitutionality of a statute; Caldor, Inc. v.Thornton, 191 Conn. 336, 344, 464 A.2d 785 (1983), aff'd,472 U.S. 703, 105 S.Ct. 2914, 86 L.Ed.2d 557 (1985); (2) the award violates clear public policy; Watertown Police Union Local 541 v.Watertown, 210 Conn. 333, 339, 555 A.2d 406 (1989); or (3) the award contravenes one or more of the statutory proscriptions of [General Statutes] § 52-418. Carroll v. Aetna Casualty SuretyCo., [189 Conn. 16, 22-23, 453 A.2d 1158 (1983)]." (Internal quotation marks omitted.) Perkins and Mario v. Annunziata,45 Conn. App. 237, 240, (1997). "Where the award is challenged as repugnant to the public policy of this state, however, [§ 52-418] allows our courts to vacate the award even if it conforms to the submission. Watertown Police Union Local 541v. Watertown, 210 Conn. 333, 339, 555 A.2d 406 (1989). . . ." (Citations omitted.) State v. Council 4, AFSCME,27 Conn. App. 635, 639-40, 608 A.2d 718 (1992).
"A public policy challenge to an arbitration award is rooted in the principle that the parties cannot expect `"conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them."'" Id., 640, quoting WatertownPolice Union Local 541 v. Watertown, supra, 210 Conn. 339-40. However, "the public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation of [collective bargaining agreements] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." (Internal quotation marks omitted.) WatertownPolice Union Local 541 v. Watertown, supra, 210 Conn. 340. "The party challenging the award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated." (Internal quotation marks omitted.) Id.
Here, the arbitrator's award was based on an express provision contained in the collective bargaining agreement. The plaintiff is seeking to have this court substitute its judgment for that of the arbitrator as to whether the term "existing practices" includes payments for comp time. The plaintiff argues CT Page 11166 that the City Council would not have approved the collective bargaining agreement had it realized that the term "existing practices" required the plaintiff to make comp payments. It is undisputed, however, that the City Council did approve the collective bargaining agreement, including the stipulation.
The arbitrator found that the plaintiff had a practice of making comp payments to its retiring employees. Since the collective bargaining agreement expressly allows for the continuation of "existing practices," it cannot be said that the City Council did not approve making of comp payments to the retiring members of the defendant association when such payments were made in the past. Essentially, the plaintiff's public policy argument is that the arbitrator's interpretation of the term existing practices" is contrary to what the plaintiff believes it should be. "The Supreme Court has not recognized any exceptions for misapplication of the words of the contract, the defect claimed by the [plaintiff]. While the [plaintiff] seeks to characterize claimed misinterpretation of contract terms as a violation of public policy, when parties submit an unrestricted issue to arbitration, they entrust contract interpretation and legal interpretations . . . to the arbitrator. Bridgeport v.Bridgeport Police Local 1159, 183 Conn. 102, 106 (1981); Bic PenCorporation v. Local 134, 183 Conn. 579, 584 (1981)." Town ofWallingford v. Local 1570, Superior Court, judicial district of New Haven at New Haven, Docket No. 378164 (March 7, 1996) (Hodgson, J.), aff'd, 45 Conn. App. 432, (1997). See also United Steelworkers of America v. Enterprise Wheel CarCorporation, 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424
(1960) ("the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his").
Since the arbitrator's decision was based on a provision contained in the collective bargaining agreement which was approved by the City Council, the award is not in violation of the claimed public policy enunciated by the court in Fennell v.City of Hartford, 238 Conn. 809, 816 (1996), that government fostered expectations cannot give rise to an implied contract. If the term "existing practices" was not meant to provide payments for comp time, the plaintiff should have explicitly defined in the collective bargaining agreement what the term was meant to CT Page 11167 signify. "What either side to an arbitration agreement cannot do upon losing arbitration is to ask the court to rewrite a labor agreement after the arbitrator has interpreted a provision adverse to it under the guise of enforcing public policy." Hartford v.Local 5600, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 705372, 15 CONN. L. RPTR. 80 (August 18, 1995) (Corradino, J.).
"[G]iven the narrow scope of the public policy limitation on arbitral authority, the plaintiff can prevail . . . only if it demonstrates that the [arbitrator's] award clearly violates an established public policy mandate." Watertown Police Union Local541 v. Watertown, supra, 210 Conn. 340. The plaintiff has not met this burden.
Accordingly, the City of Bridgeport's motion to vacate the arbitration award of May 16, 1997, is denied and the Bridgeport City Supervisor's Association's Motion to Confirm said award is granted.
SKOLNICK, J.