## PERKINS AND MARIO, P.C. *v.* ALBERT R. ANNUNZIATA
### (AC 15878)

Landau, Schaller and Shea, Js.

Argued January 21—officially released May 20, 1997

*Jonathan Perkins*, with whom, on the brief, was *Robert Luysterborghs*, for the appellant (plaintiff).

*John T. Grillo*, for the appellee (defendant).

*Opinion*

LANDAU, J. The plaintiff, Perkins & Mario, P.C., appeals from the judgment of the trial court dismissing its application to modify, correct or vacate an arbitration award in favor of the defendant, Albert R. Annunziata.[1] On appeal, the plaintiff claims that the trial court improperly dismissed its application because (1) the award of fees to a discharged attorney who handled a

[1] The arbitrators voted two to one in favor of the award.

personal injury matter on a contingency fee basis and had no written fee agreement is against public policy, (2) the arbitrators exceeded their power and acted contrary to law, and (3) one of the arbitrators had a personal, pecuniary interest in the legal issue to be decided. We reverse the judgment of the trial court.

The facts are not in dispute. In October, 1992, Kim German retained the defendant to represent her concerning her claims for damages arising out of an automobile accident. German did not enter into a written fee agreement with the defendant. The defendant represented German for approximately thirteen months. In a letter dated November 4, 1993, German discharged the defendant and retained the plaintiff to represent her. The plaintiff agreed that, upon the settlement of German's claim, it would hold attorney's fees in the amount of $1333.33 in escrow, pending the resolution by arbitration of the defendant's claim for services rendered. The defendant then forwarded the file to the plaintiff. Subsequently, the case settled and generated attorney's fees of $8300.

After the settlement, the parties could not agree on the amount of the attorney's fees owed to the defendant. The parties agreed to arbitrate the apportionment of the fee and the submission to the arbitrators asked them to determine the legal fee allocation. Following an unrecorded hearing, in which the defendant's claim sounded in quantum meruit, the arbitrators divided the $8300 fee and awarded the defendant $2500 and the plaintiff $5800. The plaintiff filed an application in the trial court to modify, correct or vacate the arbitrators' award, arguing that the claim was against public policy because the defendant had no written agreement with German, that the award was obtained by corruption, fraud or undue means, and that the arbitrators disregarded certain evidence. Following a hearing and the submission of briefs by the parties, the trial court held

that the award was not reviewable for errors of law or fact and dismissed the plaintiff's application. This appeal followed.

The plaintiff first argues that the trial court improperly dismissed its application because the award of fees to a discharged attorney who handled a personal injury matter on a contingency fee basis and had no written fee agreement is against public policy. We agree.

After the briefs were filed in this appeal, this court decided *Alan E. Silver, P.C.* v. *Jacobs*, 43 Conn. App. 184, 682 A.2d 551, cert. denied, 239 Conn. 938, 684 A.2d 708 (1996). *Silver* held that an attorney who worked on a personal injury case could not collect his fee from a successor attorney after settlement in the absence of a written fee agreement between the attorney and the client. The trial court's decision in *Silver* was subject to plenary review by this court. Because this appeal is from the confirmation of an arbitration award, however, our standard of review is narrow.

"When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." (Citations omitted.) *Garrity* v. *McCaskey*, 223 Conn. 1, 4–5, 612 A.2d 742 (1992).

In determining whether a submission is unrestricted, we look at the authority of the arbitrator. " 'The authority of an arbitrator to adjudicate the controversy is

limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review. In the absence of any such qualifications, an agreement is unrestricted. [*Garrity* v. *McCaskey*, supra, 223 Conn. 5]; *Carroll* v. *Aetna Casualty & Surety Co.*, 189 Conn. 16, 20, 453 A.2d 1158 (1983).' " *International Assn. of Fire Fighters, Local 1339, AFL-CIO* v. *Waterbury*, 35 Conn. App. 775, 778, 647 A.2d 361 (1994). Here, the submission asked the arbitrators to determine the legal fee allocation. We agree with the trial court that the award in this case arose out of an unrestricted submission.

"Even in the case of an unrestricted submission, we have, however, recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute; *Caldor, Inc.* v. *Thornton*, 191 Conn. 336, 344, 464 A.2d 785 (1983), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985); (2) the award violates clear public policy; *Watertown Police Union Local 541* v. *Watertown*, 210 Conn. 333, 339, 555 A.2d 406 (1989); or (3) the award contravenes one or more of the statutory proscriptions of [General Statutes] § 52-418. *Carroll* v. *Aetna Casualty & Surety Co.*, supra, [189 Conn.] 22–23." *Garrity* v. *McCaskey*, supra, 223 Conn. 6. Here, the plaintiff claims that the arbitrators' decision was in contravention of public policy.

An arbitration award that violates public policy may be vacated but "only when the award is clearly illegal or clearly violative of a strong public policy." *Garrity* v. *McCaskey*, supra, 223 Conn. 7. When a challenge to the arbitrators' authority is made on public policy grounds, the court is not concerned with the correctness of the arbitrators' decision, but with the lawfulness of enforcing the award. See *Watertown Police Union Local 541* v. *Watertown*, supra, 210 Conn. 340. "Parties cannot expect an intervening arbitral award approving

conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them." (Internal quotation marks omitted.) *Haynes Construction Co.* v. *Cascella & Son Construction, Inc.*, 36 Conn. App. 29, 39, 647 A.2d 1015, cert. denied, 231 Conn. 916, 648 A.2d 152 (1994), quoting *Stamford* v. *Stamford Police Assn.*, 14 Conn. App. 257, 259, 540 A.2d 400 (1988).

The defendant claims, as did the plaintiff in *Silver*, that he is entitled to recover his fee for services rendered under the equitable theory of quantum meruit.[2] As we stated in *Silver*, General Statutes § 52-251c[3] "protects injured persons from excessive legal fees. *Berry* v. *Loiseau*, [223 Conn. 786, 830 n.22, 614 A.2d 414 (1992)]. The [defendant], nevertheless, continues to argue that the public does not require protection when the file has been transferred to another attorney and the [defendant] seeks only to recover from the successor attorney. We disagree. It would be unjust to permit an attorney to avoid this public policy by splitting a fee with a successor attorney. Moreover, by enacting § 52-251c without qualification, *the legislature has imposed its view that it is more urgent to protect clients from attorneys than to protect attorneys from successor attorneys.*" (Emphasis added.) *Alan E. Silver, P.C.* v. *Jacobs*, supra, 43 Conn. App. 192. In addition, Rule 1.5 (c) of the Rules of Professional Conduct provides in

---

[2] Annunziata is limited to this theory of recovery because he does not have a contractual relationship with German.

[3] General Statutes § 52-251c (a) provides in relevant part: "In any claim or civil action to recover damages resulting from personal injury . . . the attorney and the claimant may provide by contract, which contract shall comply with all applicable provisions of the rules of professional conduct governing attorneys adopted by the judges of the Superior Court, that the fee for the attorney shall be paid contingent upon, and as a percentage of: (1) Damages awarded and received by the claimant; or (2) settlement amount pursuant to a settlement agreement."

pertinent part: "A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages of the recovery that shall accrue to the lawyer as a fee in the event of settlement, trial or appeal, whether and to what extent the client will be responsible for any court costs and expenses of litigation, and whether such expenses are to be deducted before or after the contingent fee is calculated. . . ." The defendant and German executed no such written contingent fee agreement.

Although we recognize that it is the exceptional case that is vacated on appeal because our courts have faithfully given great deference to arbitrators' decisions, we believe that this is such a case. See *State* v. *Connecticut Council 4, CEU, AFSCME*, 7 Conn. App. 286, 290–91, 508 A.2d 806 (1986). The arbitration award violates clear public policy and, as such, the award should have been vacated by the trial court. See *Garrity* v. *McCaskey*, supra, 223 Conn. 6.[4]

The judgment is reversed and the case is remanded with direction to vacate the arbitration award.

In this opinion the other judges concurred.

---

[4] Because of our disposition of the plaintiff's first claim, we do not reach the remaining issues.