# TOWN OF STRATFORD *v.* INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, AFL-CIO, LOCAL 998
## (AC 16764)

Lavery, Schaller and Hennessy, Js.

Argued December 1, 1997—officially released June 2, 1998

*J. William Gagne, Jr.*, for the appellant (defendant).

*Richard J. Buturla*, for the appellee (plaintiff).

*Opinion*

SCHALLER, J. The defendant, the International Association of Firefighters, AFL-CIO, Local 998 (union), appeals from the judgment of the trial court vacating an arbitration award. The principal issue in this appeal

is whether the trial court improperly vacated the arbitration award on the ground that the arbitration panel failed to apply the doctrine of collateral estoppel[1] with respect to a prior arbitration award on the same issue. We reverse the judgment of the trial court.

The following facts are relevant to the disposition of this appeal. The plaintiff, town of Stratford, and the union at all relevant times were parties to a collective bargaining agreement (agreement) that contained an arbitration clause. Under the arbitration clause, the parties agreed to submit unresolved grievances to the state board of mediation and arbitration (board). The parties further agreed that an arbitration decision by the board would be final.

On December 12, 1991, the date on which the grievances involved in this appeal were filed, article I of the agreement provided that "the positions of assistant fire prevention chief, assistant fire chief, deputy fire chief and chief are not members of the union bargaining unit." Section one of article XXII of the agreement, however, provided that "*all promotions in the Fire Department* shall be made from eligibility lists for each promotional classification, which lists shall be established through competitive merit examinations . . . ." (Emphasis in original.) The agreement also provided that when a vacancy occurred, it was to be filled by one of the three highest ranking candidates and that subsequent appointments were to be generated in the order of standing on the list. Moreover, the agreement provided that when an eligibility list expired, a new list had to be established within ninety days.

In 1991, the eligibility lists for the positions of assistant fire chief and lieutenant in the fire prevention

---

[1] Although the trial court employed the term "res judicata" in its memorandum of decision, it is undisputed that issue preclusion rather than claim preclusion is involved and, therefore, collateral estoppel is the appropriate doctrine.

bureau expired, and replacement lists were not created within ninety days. On December 12, 1991, the union filed a class action grievance against the town, no. 91-04, on behalf of the firefighters seeking positions in the fire prevention bureau. The grievance alleged that the town had violated the agreement because it had failed to establish new examinations and eligibility lists for the positions of assistant fire chief and lieutenant for the fire prevention bureau.

On December 12, 1991, the union also filed grievance no. 91-03, which was submitted to the board to determine if it was arbitrable. As did grievance no. 91-04, which was filed on the same day, no. 91-03 alleged that the town had violated article XXII, § 1, of the agreement. This grievance concerned the following events, which had occurred earlier in 1991. In April, 1991, the town administered a promotional examination for the position of assistant fire chief in the fire suppression division. On May 30, 1991, the results of the examination were posted and a list was established with eight individuals, ranked one through eight, with the candidate receiving the highest score ranked as number one. On or about June 3, 1991, the town interviewed the first three candidates on the eligibility list for a vacancy for the position of assistant fire chief in the fire suppression division. This vacancy was filled by the candidate who was ranked first. On or about December 11, 1991, the town interviewed the candidates ranked two through four for the assistant fire chief position, and the town selected the third ranked candidate over the second ranked candidate. On or about January 4, 1993, the town interviewed the remaining candidates for the assistant fire chief position for two additional vacancies in the fire suppression division. The town again selected lower ranked candidates over individuals with higher ranks. The union's ground for grievance no. 91-03 was that the town had failed to promote employees on the

eligibility list to assistant fire chief vacancies in the fire suppression division in the manner in which firefighters are to be selected from such lists as provided by § 1 of article XXII.

On December 28, 1993, a panel of arbitrators of the board issued an award in grievance no. 91-04, holding that article XXII of the agreement did not apply. The board found that the grievance was not arbitrable because the promotions clause of the agreement did not apply to promotions to jobs outside of the bargaining unit, including promotions to the position of assistant fire prevention chief. A unanimous panel rejected the union's contention that the parties had agreed orally in the 1987 negotiations to continue to apply article XXII to the assistant fire chief position.

On March 17, 1994, a different panel of arbitrators issued an award holding that grievance no. 91-03 was arbitrable, which was inconsistent with the earlier decision. This second panel also decided that the issue to be decided was whether article XXII applies to employee promotions to the assistant fire chief position. The subject matter of this grievance thereafter proceeded on the merits before a third panel of arbitrators.

On May 25, 1995, the third panel of arbitrators addressed the merits of no. 91-03 and issued an award holding that article XXII, § 1, did apply to promotions to the position of assistant fire chief and that the town had violated this provision. The two panels of arbitrators deciding aspects of grievance no. 91-03, therefore, reached conclusions on the issue of arbitrability that were at odds with the prior arbitration award, namely, that article XXII applies to promotions to the assistant fire chief position.

On February 22, 1996, the town filed an application to vacate the May 25, 1995 arbitration award in grievance no. 91-03 pursuant to General Statutes § 52-418

(a) (4).[2] The town argued that the arbitrators in no. 91-03 had incorrectly decided the award by failing to apply the doctrine of collateral estoppel to preclude relitigation of the interpretation of the agreement. The town argued that the decision of the panel in no. 91-04 controlled the contractual interpretation issue regarding the applicability of article XXII, § 1. A hearing was held on August 19, 1996, and on August 27, 1996, the Superior Court vacated the May 25, 1995 arbitration award in case no. 91-03. The union filed this appeal challenging the trial court's decision to vacate the arbitration award in case no. 91-03.

The union claims that the trial court improperly vacated the award in case no. 91-03 on two grounds.[3] The union contends that because the submission of the parties pertaining to grievance no. 91-03 was unrestricted,[4] the award in that case was final and binding and cannot be reviewed for errors of law or fact.

[2] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[3] The union also claims that the trial court improperly vacated the award because arbitration awards do not have the same stare decisis effect as court judgments, and the fact that inconsistencies exist between prior arbitration awards in itself is not a basis to vacate an award. Furthermore, the union claims that the trial court improperly relied on *Corey* v. *Avco-Lycoming Division*, 163 Conn. 309, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973), which is inapposite to this case. Finally, the union claims that the trial court cannot vacate an arbitration award that draws its essence from the collective bargaining agreement. We need not address these claims in view of our determination on the inapplicability of collateral estoppel.

[4] An unrestricted submission has been characterized as follows: "The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review. In the absence of any such qualifications, an agreement is unrestricted. *Carroll* v. *Aetna Casualty & Surety Co.*, 189 Conn. 16, 20, 453 A.2d 1158 (1983); *Bic*

The union contends, moreover, that even if the submission of an unrestricted arbitration award is reviewable for errors of law or fact, arbitrators in general are not bound by the decisions of other arbitrators. In this respect, the union argues that the trial court improperly applied the doctrine of collateral estoppel to vacate the award in case no. 91-03. The town claims that the trial court correctly vacated the arbitration award because the arbitrators exceeded their powers under § 52-418 (a) (4) and because the award violates clear public policy in that the arbitration board did not apply the doctrine of collateral estoppel.[5]

"At the outset, we note that as a reviewing court we afford great deference to arbitrators' decisions . . . ." *Greater Bridgeport Transit District* v. *Amalgamated Transit Union, Local 1336*, 28 Conn. App. 337, 341, 610 A.2d 1324 (1992), citing *Board of Education* v. *AFSCME*, 195 Conn. 266, 270, 487 A.2d 553 (1985), and *Board of Education* v. *Hartford Federation of School Secretaries*, 26 Conn. App. 351, 352, 600 A.2d 1053 (1992). The

*Pen Corporation* v. *Local No. 134*, 183 Conn. 579, 584–85, 440 A.2d 774 (1981); *Bridgeport* v. *Bridgeport Police Local 1159*, 183 Conn. 102, 106–107, 438 A.2d 1171 (1981)." *Garrity* v. *McCaskey*, 223 Conn. 1, 5, 612 A.2d 742 (1992).

[5] The town also claims that the doctrines of res judicata and collateral estoppel apply to arbitration awards. See *Corey* v. *Avco-Lycoming Division*, 163 Conn. 309, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973). The town argues that the trial court was correct in vacating the second arbitration panel's award because under the doctrine of collateral estoppel, the issue had already been decided in a previous proceeding. Furthermore, the town claims that the trial court properly considered *Corey* to be analogous and on point. We find the decision in *Corey* to be distinguishable. In *Corey*, the court determined the question of whether the decision of an arbitration panel precluded a hearing tribunal or another agency from deciding the same issue. Upon reviewing the same grievance the arbitration panel had already decided, the hearing tribunal reached a different result. In reaching its decision, the court in *Corey* held that a prior arbitration award was binding and conclusive on the hearing tribunal under the doctrines of collateral estoppel and res judicata. In the present case, however, the conflicting decisions involve two arbitration panels acting on an unrestricted submission.

reason for this deference is that the scope of our review is expressly limited by § 52-418 and by the terms of the parties' agreement. *Metropolitan District Commission* v. *AFSCME, Council 4, Local 184*, 237 Conn. 114, 118, 676 A.2d 825 (1996). It is well settled law in Connecticut that "[a]ny challenge to an award on the ground that the arbitrator exceeded his powers is . . . properly limited to a comparison of the award with the submission." (Internal quotation marks omitted.) *Caldor, Inc.* v. *Thornton*, 191 Conn. 336, 340, 464 A.2d 785 (1983), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985). "Where the submission is unrestricted, 'the award is . . . final and binding and cannot be reviewed for errors of law or fact.' *Milford Employees Assn.* v. *Milford*, 179 Conn. 678, 683, 427 A.2d 859 (1980)." *Carroll* v. *Aetna Casualty & Surety Co.*, 189 Conn. 16, 19, 453 A.2d 1158 (1983). "Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved." (Internal quotation marks omitted.) *Caldor, Inc.* v. *Thornton*, supra, 340–41. "Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." *Garrity* v. *McCaskey*, 223 Conn. 1, 4–5, 612 A.2d 742 (1992).

In the present case, the parties concede that both of the awards, the "first grievance decided" and the "second grievance decided," arose out of unrestricted submissions. Even though both grievances were

unrestricted and our review is limited accordingly,[6] "we have . . . recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of § 52-418." (Citations omitted.) Id., 6. The town challenges the award on the basis of the latter two grounds.

"In spite of the general rule that challenges to an arbitrator's authority are limited to a comparison of the award to the submission, an additional challenge exists . . . when the award rendered is claimed to be in contravention of public policy. . . . This challenge is premised on the fact that the parties cannot expect an arbitration award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. . . . When a challenge to the arbitrator's authority is made on public policy grounds, however, the court is not concerned with the correctness of the arbitrator's decision, but with the lawfulness of enforcing the award. . . . Accordingly, the public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation of [a collective bargaining agreement] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. . . . The party challenging the award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated." (Citations omitted; internal quotation marks omitted.) *Watertown Police Union Local 541* v. *Watertown*, 210

---

[6] The dissent fails to address the unrestricted nature of the submissions and the consequent limitations on our review.

Conn. 333, 339–40, 555 A.2d 406 (1989). Therefore, given the narrow scope of the public policy limitation on arbitrators' authority, the trial court's determination to vacate the award will stand only if the town can demonstrate that the board's award clearly violates an established public policy mandate.

"We have historically construed narrowly the two common law grounds for vacating an arbitration award. We denominate the constitutionality and public policy exceptions as common law grounds although we have, on occasion, implied that the basis for these grounds is to be found within the statutory scheme of § 52-418 (a) (4). . . . It is more appropriate to recognize that the power to determine the constitutionality of a statute and the power to strike an arbitration ruling as violative of public policy exist apart from any particular grant of authority from the legislative branch. Because of the multiple sources authorizing judicial review of arbitration awards, we therefore deem inaccurate the implication in these earlier cases that § 52-418 (a) (4) is the *sole* source of the court's power of review." (Citations omitted; emphasis in original.) *Garrity* v. *McCaskey*, supra, 223 Conn. 6.

The town acknowledges that in deciding whether arbitrators have exceeded their powers under § 52-418 (a) (4), courts have generally compared the award with the submission to determine if the award exceeds the scope of the submission. *New Haven* v. *AFSCME, Council 15, Local 530*, 208 Conn. 411, 415–16, 544 A.2d 186 (1988); *Board of Education* v. *AFSCME*, supra, 195 Conn. 271. The town argues, however, that this general analysis is not appropriate to determine whether the doctrine of collateral estoppel should be applied to preclude the arbitrator from deciding the same issue of contractual interpretation again.[7] We are not per-

[7] In support of its argument, the town cites *International Assn. of Firefighters* v. *Las Vegas*, 107 Nev. 906, 823 P.2d 877 (1991). Furthermore, the

suaded. In this case, the town and the union submitted to the arbitrator the question of whether the grievance was arbitrable. The award was issued stating that "[t]he matter is arbitrable and the employees are entitled to know whether or not article XXII will be operative should an employee choose to aspire to the position of Assistant Fire Chief." Therefore, in comparing the award with the submission, the arbitrators did not exceed their powers under § 52-418 (a) (4).

In addition, the town argues that although the submission in this case was unrestricted, courts have the authority to vacate an award pursuant to § 52-418 (a) (4) when it violates clear public policy. The town maintains that the second arbitration board failed to apply the doctrine of collateral estoppel and, therefore, did not adhere to the public policy consideration that requires giving collateral estoppel effect to prior arbitration awards in subsequent arbitrations. The town argues that "[c]onflicting contractual interpretation awards are repugnant to the fundamental policy underlying the doctrines of res judicata and collateral estoppel that a multiplicity of the same disputes should be avoided." The town asserts, therefore, that the trial court was justified in vacating the arbitration award at issue.

We acknowledge that the doctrine of collateral estoppel is based and enforced on the ground of public policy. *Brady* v. *Anderson*, 110 Conn. 432, 435, 148 A. 365

town rests this claim on the doctrine that an award interpreting a collective bargaining agreement becomes a binding part of the agreement. *Fournelle* v. *National Labor Relations Board*, 670 F.2d 331, 344 (D.C. Cir. 1982) citing F. Elkouri & E. Elkouri, How Arbitration Works (1973) p. 377. While that doctrine is cited in *Fournelle* and Elkouri, no Connecticut authority is cited nor have we found any such case. Moreover, the doctrine appears to relate principally to the filling in of gaps "by reference to the practices of the particular industry and of the various shops covered by the [collective bargaining] agreement." *United Steelworkers* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574, 580, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960).

(1930). "To prevent a multiplicity of actions, equity will enjoin further litigation of a cause of action which has already been adjudicated. A final judgment on the merits is conclusive on the parties in an action and their privies as to the cause of action involved. If the same cause of action is again sued on, the judgment is conclusive with respect to any claims relating to the cause of action which were actually made or might have been made. . . . Collateral estoppel is that aspect of res judicata which is concerned with the effect of a final judgment on the subsequent litigation of a different cause of action involving some of the issues determined in a former action between the parties." (Citations omitted.) *Corey* v. *Avco-Lycoming Division*, 163 Conn. 309, 316–17, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973).[8] As stated previously, the narrow exception that allows an award involving an unrestricted submission to be vacated by a court is premised on the fact that the parties cannot expect an arbitration award approving conduct that is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them.[9]

Although it can be said that collateral estoppel is a public policy notion in a general sense by virtue of its being well established in the law, we conclude that the failure of an arbitration board to apply this doctrine does not violate a well defined and dominant public policy in the sense that gives rise to the narrow excep-

[8] Although the dissent purports to extend our Supreme Court's decision in *Corey* to cover the situation presented in the case at hand, we have previously noted in footnote five that *Corey* is factually distinguishable from the present case.

[9] Citing a Nevada case, *International Assn. of Firefighters* v. *Las Vegas*, 107 Nev. 906, 823 P.2d 877 (1991), the dissent relies on the proposition that an arbitrator's interpretation of the collective bargaining agreement becomes part of the contract and binds both parties. That proposition has not been adopted in Connecticut.

tion. In the few cases where courts have vacated arbitration awards on public policy grounds, those awards contravened a *well defined* public policy mandate. See *Board of Trustees* v. *Federation of Technical College Teachers*, 179 Conn. 184, 195, 425 A.2d 1247 (1979). Other cases have held similarly. In *State* v. *Connecticut Council 4, CEU, AFSCME*, 7 Conn. App. 286, 290, 508 A.2d 806 (1986), awards were set aside pursuant to § 52-418 (a) (4) because they were found to be in direct conflict with the policy of the state and the legislative intent that was clearly expressed in provisions of a state statute. In *International Brotherhood of Police Officers* v. *Windsor*, 40 Conn. Sup. 145, 148, 483 A.2d 626 (1984), an arbitration award that upheld the disciplining of a police officer for refusing to falsify an arrest warrant was set aside. Another example where a court vacated an arbitration award that contravened a well defined and specific public policy occurred in *Avco Corp.* v. *Preteska*, 22 Conn. Sup. 475, 174 A.2d 684 (1961). In *Avco*, the court held that the arbitration board exceeded its authority when the award was found to contravene public policy because it called for the reinstatement of an employee who had been convicted under a state statute for gambling on his employer's premises. Id., 477–81. We conclude that rendering two inconsistent opinions in the context of arbitration proceedings is not a violation of a well defined and dominant public policy, and does not warrant court-ordered application of collateral estoppel.

Accordingly, we conclude that the trial court improperly interpreted the public policy exception as a basis for vacating the arbitration award as to grievance no. 91-03.

The judgment is reversed and the case is remanded with direction to render judgment denying the application to vacate the arbitration award.

In this opinion HENNESSY, J., concurred.

LAVERY, J., dissenting. I respectfully dissent from the majority opinion, which reinstates the arbitration award vacated by the trial court. The issues in both arbitrations no. 91-03 and no. 91-04 were identical. The parties, the town and the union were also identical.

The issue to be decided in both arbitrations was whether article XXII of the agreement applies to promotions outside of the bargaining unit, i.e., the assistant fire chief. The decision in grievance no. 91-04, that article XXII was not arbitrable because the promotions clause of the agreement did not apply to promotions to jobs outside of the bargaining unit, including promotion to the position of assistant fire prevention chief, was binding on the decision in no. 91-03, the subject of this appeal.

I agree with the trial court's determination that the first arbitration award should be accorded res judicata-collateral estoppel effect and in its citing of *Corey* v. *Avco-Lycoming Division*, 163 Conn. 309, 319, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973). In *Corey*, the court held that res judicata-collateral estoppel applied to the award of an arbitration panel in bar of subsequent litigation on the same claim.

In *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, 236 Conn. 582, 674 A.2d 1290 (1996), our Supreme Court stated: "[T]he doctrine of res judicata, or claim preclusion, [provides that] a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose. . . . The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different

evidence or legal theories might be advanced in support of it. We have adopted a transactional test as a guide to determining whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of res judicata. [T]he claim [that is] extinguished [by the judgment in the first action] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. . . . In applying the transactional test, we compare the complaint in the second action with the pleadings and the judgment in the earlier action." (Citations omitted; internal quotation marks omitted.) Id., 589–90.

In this case, both arbitrations included the same parties, the plaintiff town and the defendant union. The issue was also the same in both arbitrations, that is, whether the promotion clause for the collective bargaining agreement applied to promotions to the nonbargaining unit position of assistant fire chief or assistant fire prevention chief. Although the first arbitration was for the position of assistant fire prevention chief and the second was for the position of assistant fire chief, both positions were out of the bargaining unit and the issue or claim is the same.

Once the arbitrator found that the promotions clause of the collective bargaining agreement did not apply to promotions to a nonbargaining unit position, it became part of the contract and bound both parties. *International Assn. of Firefighters* v. *Las Vegas*, 107 Nev. 906,

823 P.2d 877 (1991). "Those courts that have considered the issue [of the applicability of collateral estoppel to arbitration awards] have held the doctrine to be applicable, especially in the context of labor arbitration. E.g., *Todd Shipyards Corp.* v. *Industrial U. of Marine & Ship Wkrs.*, 242 F. Sup. 606, 611 (D.N.J. 1965) . . . *Cleveland* v. *Ass'n of Cleveland Fire Fighters*, [20 Ohio App. 3d 249, 254, 485 N.E.2d 792 (1984)] (arbitration award has the same preclusive effect as a court judgment). In these jurisdictions, the party seeking to avoid issue preclusion has the burden of showing that the arbitrators did not decide the issue. Id.

"Policy considerations underlie our conclusion that the doctrine of collateral estoppel should apply to arbitration. The harmony sought by arbitration as a substitute for work stoppage and elimination of strife between labor and management could be jeopardized if repetitive submission to arbitration of the same issue was permitted. *Todd Shipyards Corp.*, [supra] 242 F. Supp. at 611. Here, the prior decision involves the interpretation of the identical contract provision between the same employer and union. In such cases, every principle of common sense, policy, and labor relations demands that [the decision] stand until the parties annul it by a newly worded contract provision. F. Elkouri and E. A. Elkouri, How Arbitration Works, 426 (4th ed. 1985) (quoting Pan Am. Ref. Corp., 2 ALAA ¶ 67, 937, p. 69, 464 [1948]). Moreover, unless there is finality to an arbitration award, there is no inducement for parties to accept a provision for arbitration in the labor agreement." (Internal quotation marks omitted.) *International Assn. of Firefighters* v. *Las Vegas*, supra, 107 Nev. 911–12.

The Nevada court found that the prior award construing the collective bargaining agreement became part of

the agreement and that in contradicting the interpretation of the prior awards, the arbitrator contradicted the agreement and exceeded his authority.

I agree with the reasoning of the Nevada Supreme Court and I would uphold the trial court's decision.