[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Tunxis Recycling Operating Committee (TROC), seeks an order vacating an arbitration award in favor of the defendant Automated Container Recovery, Inc. (ACRI). TROC is a political subdivision of the state of Connecticut that was established by an inter-community agreement pursuant to General Statutes § 22a-221.[1] The inter-community agreement provides for TROC to establish a recycling program for the member municipalities, and also to authorize the construction and operation of an intermediate processing center (IPC).[2]
In an effort to carry out its mandate, TROC, on March 15, 1990, disseminated request for proposals "to procure land, permits, financing, design, construction and operation of the IPC to service the TROC member communities." (Stipulated Facts, pp. 1-2.) As a result of TROC's request, on December 17, 1990, TROC and ACRI executed a contract by which ACRI agreed to construct and operate an IPC to service the TROC member municipalities. The contract provided for a twenty year term, with renegotiation of certain provisions to occur every five years.[3]
Pursuant to the contract, TROC was to pay ACRI a processing fee for each ton of recyclables processed. The contract also guaranteed that TROC would supply a minimum revenue stream to sustain the operation of the IPC through the delivery of a minimum tonnage of recyclables per month.
For approximately four years, the parties performed their respective obligations under the contract without incident. On May 16, 1994, however, the United States Supreme Court, in its decision of C A Carbone Inc. v. Town of Clarkson. New York,500 U.S. 1, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994) (Carbone),
ruled "that flow control ordinances posed an unconstitutional restraint on interstate commerce." (Application to Vacate, p. 4.) As a result of the Carbone decision, TROC claimed that it experienced a significant reduction in the amount of material delivered by recycling haulers to the IPC, and therefore it was unable to meet its minimum requirements obligation under the contract.
Thus, on October 28, 1994, TROC informed ACRI that theCarbone decision constituted a change in the law that prevented TROC from meeting its minimum delivery obligations under the contract, and therefore it would not pay a processing fee for short-falls in its delivery. As a result of TROC's declarations, the parties began extensive negotiations to resolve their mutual CT Page 10180 dilemma.
Then on June 1, 1995, after months of negotiation, TROC and ACRI executed an amended contract for the operation of the IPC. The amended contract required ACRI to process recyclables delivered by TROC for a fixed processing fee. ACRI was also permitted under the amended contract to process recyclables from sources other than the member municipalities, provided that the member municipalities needs took priority over all other sources. Further, the amended contract provided that TROC communities would deliver at least 17,804 tons of recyclables to the IPC per year.[4]
Additionally, the amended contract included a "put-or-pay" provision. Under this provision, TROC guaranteed to pay ACRI a specified dollar amount per ton of recyclables up to 17,804 tons per year, regardless of whether TROC actually delivered 17,804 tons of recyclables to the IPC.
In 1996, TROC delivered 16,648.10 tons of recyclables to the IPC, and in 1997, TROC delivered 17,303.76 tons of recyclables to the IPC. Consequently, ACRI sought payment under the guaranteed put-or-pay provision in the amended contract based upon the difference between the minimum required delivery number, and the actual number of tons of recyclables received.
On June 5, 1997, as a result of the parties inability to reach an accord with respect to the alleged payment due, ACRI filed a "Demand for Arbitration" (Demand) with the American Arbitration Association and asserted claims of breach of contract and Connecticut Unfair Trade Practices Act (CUTPA) violations. ACRI subsequently amended its Demand, although its claims had remained the same, and sought $47,509.91 in damages, costs, and interest. In response to ACRI's Demand for arbitration, TROC filed an answer and six special defenses. On February 4, 1998, the arbitrator of the dispute issued an award in favor of ACRI in the precise amount sought in the amended Demand.
On February 26, 1998, in timely fashion, the plaintiff filed an application to vacate the arbitration award. On March 25, 1998, the defendant ACRI filed an amended counterclaim to TROC's application to vacate, seeking a confirmation of the arbitrator's decision and award.
TROC, in its memorandum in support of the application to CT Page 10181 vacate, puts forth three separate arguments for the vacating of the arbitration award: (1) that the "[p]ublic policy of the state of Connecticut bars ACRI from recovering a recycling processing fee during a period in which it lacked a permit to process recyclables and flagrantly violated state law governing the processing of solid waste" (Plaintiff's Memorandum in Support p. 16.); (2) "[t]he arbitrator exceeded his powers in issuing an award which was contrary to the contract between ACRI and TROC" (Plaintiff's Memorandum in Support p. 22.); and (3) the "arbitrator failed to reach a mutual, final and definite award on the subject matter submitted to him." (Plaintiff's Memorandum in Support, p. 24.)
ACRI argues in opposition to the plaintiff's application to vacate, and, in support of its counterclaim seeking affirmation of the arbitration award, that TROC's claims are without merit. Specifically, ACRI argues that TROC, by submitting to unrestricted voluntary arbitration waived its right to judicial review, and therefore this application should be dismissed.[5]
(Defendant's Memorandum, p. 4.) ACRI also argues that the contract at issue is not violative of public policy or illegal because the inherent purpose of the contract is not impermissible in any way, and thus TROC's argument to the contrary must be rejected. (Defendant's Memorandum, p. 14.) Finally, ACRI argues that TROC's claims that the arbitrator exceeded his authority, and that the arbitrator's decision does not "draw its essence" from the contract, are unsupported by the law and the record. (Defendant's Memorandum, p. 14-17.)
At the outset, the court notes that it must "afford great deference to [the] arbitrator's decisions." Stratford v.International Assn. of Firefighters, 48 Conn. App. 849, 854, ___ A.2d ___, cert. granted, 245 Conn. 918, ___ A.2d ___ (1998); Board ofEducation v. AFSCME, 195 Conn. 266, 270, 487 A.2d 553 (1985). "The reason for this deference is that the scope of [the court's] review is expressly limited by [General Statutes] § 52-418
and by the terms of the parties' agreement." Stratford v.International Assn. of Firefighters, supra, 48 Conn. App. 855;Metropolitan District Commission v. AFSCME Council 4, Local 184,237 Conn. 114, 118, 676 A.2d 825 (1996). "Where the submission is unrestricted, the award is . . . final and binding and cannot be reviewed for errors of law or fact." (Internal quotation marks omitted.) Stratford v. International Assn. ofFirefighters, supra, 48 Conn. App. 855; Carrol v. Aetna Casualty Surety Co., 189 Conn. 16, 19, 453 A.2d 1158 (1983). "Where the CT Page 10182 submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the ground that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence, nor where the submission is unrestricted, will they review the arbitrators's decision of the legal questions involved." (Internal quotation marks omitted.) Stratford v. InternationalAssn. of Firefighters, supra, 48 Conn. App. 855. "Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." (Internal quotation marks omitted.) Id.
The court finds that in this action the parties agreed to unrestricted voluntary arbitration. The relevant provision of the parties' amended contract provides in pertinent part: "Section 8.08. (a) As soon as required after the [c]ontract [d]ate, the parties will designate, as the [i]mpartial [a]rbitrator . . . Any and all disputes, differences, controversies, or claims, pertaining to or arising out of or relating to this [a]mended contract, or breach thereof, which the parties are unable to resolve themselves, shall be submitted to and finally resolved by the [i]mpartial arbitrator in accordance with this § 8.08, and with the commercial arbitration rules of the American Arbitration Association . . . (c) In any dispute any dispute to be resolved by the [i]mpartial [a]rbitrator pursuant to this [a]mended contract, the determination of the [i]mpartial [a]rbitrator will be final and binding on the parties." Although the submission to the arbitrator in this action did not specify the type of arbitration the parties agreed to, the plain language of section 8.08 of the amended contract demonstrates that the parties intended to submit to voluntary unrestricted arbitration.
Nonetheless, the court is not unmindful that "[e]ven in the case of an unrestricted submission, [the courts have] recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statutes; . . . (2) the award violates clear public policy; . . . or (3) the award contravenes one or more of the statutory proscriptions of [General Statutes] §52-418." (Citations omitted; internal quotation marks omitted.)Perkins Mario P.C. v. Annunziata, 45 Conn. App. 237, 240,694 A.2d 1388 (1997). Here, the plaintiff claims that the arbitration CT Page 10183 award is in contravention of both General Statutes § 52-418
(a)(4), and also well-recognized public policy.
 I. General Statutes § 52-418 (a)(4)
General Statutes § 52-418 provides, in pertinent part: "(a) Upon the application of any party to an arbitration, the superior court for the judicial district in which the one of the award shall make an order vacating the award if parties resides it finds that any of the following defects: . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."
"It is well settled law in Connecticut that any challenge to an award on the ground that the arbitrator exceeded his powers [under General Statutes § 52-418 (a)(4)] is . . . properly limited to a comparison of the award with the submission." (Internal quotation marks omitted.) Stratford v. InternationalAssn. of Firefighters, supra, 48 Conn. App. 855; Caldor, Inc.v. Thornton, 191 Conn. 336, 340, 464 A.2d 785 (1983), aff'd,472 U.S. 703, 105 S.Ct. 2914, 86 L.Ed.2d 557 (1985); InternationalAssn. of Fire Fighters Local 1339 AFL-CIO v. Waterbury,35 Conn. App. 775, 779, 647 A.2d 361 (1994). "[T]he submission defines the scope of the entire arbitration proceeding by specifically delineating the issues to be decided and no matter outside the submission may be included in the award." Board ofEducation v. Hartford Federation of School Secretaries,26 Conn. App. 351, 353 54, 600 A.2d 1053 (1992). "The burden of demonstrating the non conformity of the award to the submission is on the party seeking to vacate the award." (Internal quotation marks omitted.) International Assn. of Fire Fighters,Local 1339. AFL-CIO v. Waterbury, supra, 35 Conn. App. 779
Here, ACRI's submission to the arbitrator in the form of its "Amended Nature of Dispute," sought to resolve whether TROC had breached the amended contract, and if so, whether TROC was also liable to ACRI for CUTPA violations. Additionally, ACRI's submission sought damages, in exact amounts, for each alleged injury arising from TROC's alleged breach of contract and CUTPA violations.
TROC argues that the arbitrator's award did not conform to the submission because the central issue to be determined was "whether the United States Supreme Court's decision in Carbone,
CT Page 10184 which invalidated the TROC communities flow control ordinances, constituted a change of law as defined by the contract between TROC and ACRI." (Plaintiff's Memorandum p. 25.) As such, the arbitator's terse ruling that ACRI was entitled to damages, without any specific ruling on this particular issue, constituted an indefinite and non-final award.
The court, however, finds that the arbitrator's award indicates that he took TROC's argument into account, and then rejected that argument. See Costello Const. Corp. v. TeamstersLocal 559, 167 Conn. 315, 320, 355 A.2d 299 (1974) ("the arbitrators are only required to render an award in conformity to the submission and an award need contain no more than the actual decision of the arbitrators"); Maluszewski v. Allstate Ins. Co.,34 Conn. App. 27, 37, 640 A.2d 129, cert. denied, 229 Conn. 921,642 A.2d 1214 (1994) (arbitration decision indicates whether arbitrator considered issues raised in submission). Additionally, the only submissions to the arbitrator were the general issues of whether TROC had breached the parties amended contract, and if so, whether TROC had committed CUTPA violations. (Defendant's Exhibit C; Amended Nature of Dispute.) The specific issue of the effect of Carbone on the amended contract was not raised by TROC in a submission to the arbitrator.
Nonetheless, ACRI's submission to the arbitrator did contain a discussion of Carbone's effect on the parties' amended contract. (Defendant's Exhibit C, p. 6; Amended Nature of Dispute.) Specifically, ACRI's submission alleged that the parties were aware of the Carbone decision prior to the execution of the amended contract, and that they had negotiated the amended contract with Carbone particularly in mind. (Defendant's Exhibit C, p. 6; Amended Nature of Dispute.) Consequently, ACRI claimed that the decision had no effect on the parties' respective duties and obligation under the amended contract.
The arbitrator, in rendering his award, stated that "[o]n the claim of [ACRI] against [TROC], I award [ACRI] the sum of $47,509.91 to be paid by [TROC]." (Defendant's Exhibit F.) In its submission and Demand for arbitration, ACRI sought exactly $47,509.91 in damages for TROC's breach of contract and CUTPA violations. Therefore, when the damages sought in the submission based upon ACRI's two claims are compared with the actual award, the arbitrator's award conforms to the submission. Moreover, the arbitrator's award implicitly demonstrates that the arbitrator rejected TROC's argument concerning the effect of the Carbone
CT Page 10185 decision on the parties' amended contract. Conversely, the award necessarily found ACRI's argument concerning Carbone persuasive. Yet, the court's function here is not to determine whether the arbitrator's ruling was correct, but rather, the court must only decide whether the submission conformed to the award.
Accordingly, the court concludes that the submission conforms to the award because the claims and demand for relief in the submission conform identically to the award actually rendered. Therefore the arbitrator properly rendered a "mutual, final and definite award" as required by General Statutes § 52-418
(a)(4).
 II. Public Policy
"An arbitration award that violates public policy may be vacated but only when the award is clearly illegal or clearly violative of a strong public policy." (Internal quotation marks omitted.) Perkins Mario P.C. v. Annunziata, supra,45 Conn. App. 240; Garrity v. McCaskey, 223 Conn. 1, 7, 612 A.2d 742
(1992). "When a challenge to the arbitrator's authority is made on public policy grounds, the court is not concerned with the correctness of the arbitrator's decision, but with the lawfulness of enforcing the award. Perkins Mario P.C. v. Annunziata,
supra, 45 Conn. App. 240; see Watertown Police Union Local 541v. Watertown, 210 Conn. 333, 340, 555 A.2d 406 (1989). "[T]he public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's [decision] . . . is limited to situations where the contract would violate some explicit public policy that is defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. . . ." (Internal quotation marks omitted.)State v. Council 4, AFSCME, 27 Conn. App. 635, 640, 608 A.2d 718 (1992). The public policy exception exists because "[p]arties cannot expect an intervening arbitral award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them." (Internal quotation marks omitted.) Perkins Mario, P.C. v. Annunziata, supra,45 Conn. App. 240-41; Haynes Construction Co. v. Casella SonConstruction, Inc., 36 Conn. App. 29, 39, 647 A.2d 1015, cert. denied, 231 Conn. 916, 648 A.2d 152 (1994). "The party challenging the award bears the burden of proving that illegality CT Page 10186 or conflict with public policy is clearly demonstrated."Watertown Police Union Local 541 v. Watertown, supra,210 Conn. 340.
TROC's challenge to the award in the instant action is predicated upon its allegation that ACRI operated the IPC in a manner that exceeded its authorization. Particularly, TROC claims that ACRI was only authorized to process a specific, limited amount of recyclables, but ACRI routinely and "flagrantly" exceeded this authorization, and therefore ACRI violated the clear public policy embodied in the environmental statutes. The court, however, finds that TROC's argument fails to demonstrate that the enforcement of the award would clearly violate any public policy.
The following relevant facts are derived from the parties submission of Stipulated Facts. On November 20, 1992, ACRI had applied for, and received, a permit to process fifty (50) tons per day or thirteen thousand (13,000) tons per year of "source separated commingled food containers." Furthermore, on February 4, 1994, ACRI, pursuant to a general permit, registered as a Limited Processing Recycling Facility. Then, on October 25, 1995, after the execution of the amended contract, the DEP issued ACRI a notice of violation for operating its IPC in excess of its permit. But on February 16, 1996, the commissioner of the DEP signed a consent order authorizing ACRI to expand its hours of IPC operations, provided that ACRI applied for the necessary permits to come into compliance with all the applicable environmental regulations. Thus, on May 15, 1996, the DEP accepted for processing an application from ACRI "seeking an individual permit to process 75 tons of paper recyclables and a modification of the permit regarding commingled bottle and cans."
Contrary to TROC'S argument in its memorandum, this action is unlike other cases where arbitration awards have been vacated because a party performing work pursuant to contract has failed to obtain a license or permit, because ACRI did in fact possess a permit to process recyclables. See Design Development Inc. v.Brignole, 20 Conn. App. 685, 570 A.2d 221 (1990); ConnecticutBreweries Co. v. Murphy, 81 Conn. 145, 70 A. 450 (1908). As a result, this action really involves questions of degree; specifically, to what extent, if any, did ACRI exceed its authorization for the operation of the IPC. That question, however, is one better answered by the DEP, and not the court. CT Page 10187
Based upon the evidence, it is probable that ACRI was not at all times in strict compliance with its permit for the operation of the IPC. (See affidavit of Thomas Pregman, DEP Supervising Environmental Analyst.) But the evidence concerning this issue is not so uncontroverted that the court can find with any degree of certainty that ACRI's conduct "clearly" violated a "strong" public policy. (Stipulated Facts pp. 5-7.)
Under the circumstances, it would appear that the DEP was closely regulating ACRI's activities, and that the DEP was well aware of ACRI's business practices. This is most fully evidenced by the DEP's issuance to ACRI of a notice of violation on October 25, 1995, for precisely the conduct complained of by TROC. Presumably, however, if the DEP felt that ACRI was engaged in activities that posed a more serious environmental hazard, it could have taken more drastic steps to remedy the situation than to only issue ACRI a notice of violation. See General Statutes § 22a-226 (potential $25,000.00 a day fine for violations of environmental statutes); § 22a-226a (knowing violation of environmental statutes carries maximum prison term of two years.)
Moreover, the evidence indicates that the DEP and ACRI had an ongoing relationship with respect to the operation of the IPC through the DEP's issuance of consent orders and ACRI's applications for permits. Thus, the fact that the DEP has not found ACRI to be in any serious violation of the environmental laws, despite purportedly at times, exceeding its operational authorization, precludes this court from making a similar finding with respect to any public policy exception to the arbitration award at issue here.
As such, the court finds that the enforcement of the arbitration award would not violate any clear and strong environmental public policy.
 III. Award Contrary to the Contract
TROC argues that the arbitrator's award is contrary to the amended contract because ACRI was in breach of contract for failure to secure the necessary permits to operate the IPC at the level it was in fact operating at, and therefore it should not be entitled to gain from its own breach. Specifically, TROC argues that the arbitrator's award ignores the fact that "[u]ntil ACRI obtained the necessary permits to process recyclables, its clear breach of that contractual obligation bars it from seeking an CT Page 10188 award for a processing fee from TROC." (Plaintiff's Memorandum p. 23.) The court, however, finds that the plaintiff's argument is unpersuasive.
"There are limited circumstances in which a court will conduct a broader review of an arbitrator's decision. Where one party claims that the award, as issued, is inherently inconsistent with the underlying [contract], the court will compare the agreement with the award to determine whether the arbitrator has ignored his obligation to interpret and apply the agreement as written. Board of Education v. Local 818,5 Conn. App. 636, 640, 502 A.2d 426 (1985). "This additional analysis is conducted pursuant to such a claim because an arbitrator's award is legitimate only so long as it draws its essence from the [contract]. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse the enforcement of this award." (Internal quotation marks omitted) Id.; Darien Education Assn. v. Board of Education, 172 Conn. 434,437, 374 A.2d 1081 (1977). "It must be emphasized, however, that merely claiming inconsistency between the agreement and the award will not trigger judicial examination of the merits of the arbitration award. Rather, in the face of such a claimed inconsistency, this court will review the award only to determine whether it draws its essence from the [contract]." (Internal quotation marks omitted.) Board of Education v. Local 818, supra,5 Conn. App. 640.
As was discussed more fully previously, the court finds that the evidence reflects that it is not crystal clear whether ACRI's operation of the IPC was within the scope of its permit. Nonetheless, the parties do not dispute the fact that ACRI actually obtained a permit to process recyclables at the IPC. Thus, it was reasonable for the arbitrator to conclude that the amended contract's requirement that ACRI obtain all the necessary permits to operate the IPC had been met, and therefore ACRI was not in breach of contract and could be awarded damages. Thus, the award arose out of the "essence" of the agreement, and the court will enforce the arbitrator's award.
In sum, the evidence demonstrates that the parties submitted to voluntary unrestricted arbitration to settle their contract dispute. Then, after an extensive arbitration hearing, the arbitrator found that TROC had breached its contract with ACRI. Additionally, the evidence demonstrates that the DEP has not taken any serious action against ACRI for its alleged violations CT Page 10189 of the environmental statutes; although it unquestionably had the power to do so and was well aware of ACRI's conduct. Therefore, when the court takes into consideration the evidence presented, as well as its narrow and limited standard of review for unrestricted voluntary arbitration, the vacating of the arbitration award in this action is unwarranted.
Accordingly, TROC's application to vacate the arbitration award is denied, and ACRI's amended counterclaim seeking affirmation of the arbitration award is granted.
BY THE COURT
Sandra V. Leheny Judge of the Superior Court